# FILED

May 29 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0459

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 184

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

ANGELA R. MAETCHE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DC 2006-152
Honorable David G. Rice, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender; Roberta R. Zenker, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General; J. Stuart Segrest,
Assistant Attorney General, Helena, Montana

          Cyndee L. Peterson, Hill County Attorney, Havre, Montana

Submitted on Briefs:  March 26, 2008

Decided:  May 29, 2008

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Angela R. Maetche (Maetche) appeals the denial of her motion for a directed verdict in the District Court of the Twelfth Judicial District, Hill County. In this motion, Maetche sought to dismiss one count of criminal mischief, a felony in violation of § 45-6-101, MCA, for insufficiency of evidence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On November 1, 2005, Maetche entered into a rental agreement with Mark and DaNita Menard (Menards) to rent a mobile home they owned in Havre, Montana. Maetche, her husband at the time Kenny Maetche, and her five children subsequently occupied the mobile home. On March 1, 2006, Maetche gave the Menards thirty days written notice of her intent to terminate the rental agreement, as she and her family were planning to move to Idaho. Approximately two weeks later, DaNita Menard showed the mobile home to a prospective renter. At that time, the only damage DaNita Menard noticed was a hole in a wall of the back bedroom. She brought this damage to Maetche's attention, and Maetche told her that it would be repaired.

¶3 On April 1, 2006, the Menards were driving by the trailer and noticed it appeared vacant. When they entered the mobile home they found that Maetche and her family had vacated the premises and "completely trashed" the mobile home. The refrigerator was full of rotten food and damaged to the point where it was no longer usable. The bathroom had been virtually gutted, and the subfloors were soaked with water. In addition to an overpowering stench of mold and rotting food, the carpets were badly stained and smeared, ceiling fans were damaged or destroyed, windows were cracked or

2

shot out, walls were punctured with numerous holes, and the flooring in the laundry room was water-soaked. Additionally, the washer and drier were missing. The total amount of damage caused to the mobile home was later estimated at over $11,000.00.

¶4 After discovering the extent of this damage and absence of the washer and drier, the Menards notified law enforcement in Hill County. A warrant was subsequently issued in Hill County for the arrest of Maetche and her husband. They were later apprehended in Boise, Idaho. Maetche spent nineteen days in jail prior to her arraignment in Hill County for misdemeanor theft and felony criminal mischief. Kenny later admitted to damaging the mobile home, and the record indicates that he was separately charged with an offense and received a three-year suspended sentence.

¶5 A bench trial was held on April 26, 2006. Prior to trial, the State notified Maetche that it would seek to prove the criminal mischief count under a theory of accountability. The criminal mischief statute under which Maetche was charged provides in part that "[a] person commits the offense of criminal mischief if the person knowingly or purposely: (a) injures, damages, or destroys any property of another or public property without consent . . . ." Section 45-6-101(1)(a), MCA. Under § 45-2-302(3), MCA, a person is legally accountable for the conduct of another when "either before or during the commission of an offense with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense." In proposed findings of fact and conclusions of law filed prior to trial, the State outlined its application of this legal theory as follows:

3

> [T]he Defendant is GUILTY of the offense of criminal mischief, a felony, as she knowingly or purposely damaged the property of Mark and Danita Menard without their consent and the damage was in excess of $1,000.00. The Defendant committed the offense by accountability when during the commission of the criminal offense, she aided and abetted her spouse and children in the continued commission of the offense. While the Defendant's purpose and knowledge ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the operations of her human mind, the Court [can infer] the Defendant's state of mind from her acts and all other facts and circumstances in evidence. In doing so, the Court [should find] that it was the Defendant's purpose to promote or facilitate her husband and children's criminal mischief.

¶6 Maetche pled not guilty to the charges. During the bench trial, the State presented direct photographic and eyewitness evidence concerning the extent and nature of the damage to the mobile home. The State also presented circumstantial evidence indicating the damage to the mobile home occurred during the two-week period prior to the date that Maetche and her family vacated the premises, and that Maetche was still living at the mobile home during that time. Additionally, an eyewitness testified seeing Maetche and Kenny loading the washer and drier onto a trailer as they left the mobile home. However, the prosecution did not present any direct evidence proving that Maetche personally caused any of the damage to the mobile home.

¶7 At the close of the State's case-in-chief, Maetche moved for a directed verdict on the criminal mischief count. Maetche argued the count should be dismissed because the State failed to present any evidence that she had "raised one finger to cause any bit of damage to any property at all." Maetche argued the prosecution failed to establish that, either before or during the damage, she solicited, aided, abetted, agreed or attempted to aid a member of her family in committing the damage to the mobile home. Maetche

4

asserted that under Montana law mere presence or knowledge of a crime, or failure to oppose the commission of a crime—what might be termed "negative acquiescence"—is insufficient to establish accountability. Maetche asserted she did not have a statutory duty to stop the damage, and thus cannot be held accountable for criminal conduct committed by members of her family unless the State can show that she engaged in a voluntary act to encourage or aid the commission of the damage.

¶8 Maetche also argued that the issue of her responsibility for the damage was a strictly civil matter for the contracting parties to resolve, and that the State could not use this civil liability as a stepping stone to establish accountability for a criminal act. Maetche maintained the District Court could not a hold a tenant criminally responsible for damage based solely upon a contractual duty.

¶9 The State argued that it had presented sufficient circumstantial evidence to prove Maetche was guilty of criminal mischief by accountability. The State maintained that the evidence showed Maetche was present at the mobile home during the two-week period the damage was occurring, knew about it, and because she took responsibility for the mobile home by signing the rental agreement, should be held criminally liable. The State argued that because she was aware of the damage, and did nothing to prevent it or clean it up, she knowingly contributed to it. Thus, the State argued that it had presented sufficient evidence to survive a motion to dismiss the criminal mischief charge and to prove Maetche's guilt beyond a reasonable doubt.

¶10 The District Court ultimately denied Maetche's motion. It noted that under § 46-16-403, MCA, the test was whether there was insufficient evidence presented to

support a finding or verdict of guilt, and that under *State v. Spang*, 2002 MT 120, 310 Mont. 52, 48 P.3d 727, the issue before the District Court was whether a theory of accountability could apply. The District Court noted that while mere presence or failure to disapprove or oppose another's action was, by itself, insufficient to sustain an accountability charge, those factors could be considered by the District Court, along with other circumstances indicating the defendant somehow aided or abetted in the commission of a crime. Ultimately, the District Court concluded that accountability could be proven based on the direct evidence of the nature of the damage, and the circumstantial evidence indicating that Maetche was living in the mobile home while the damage was occurring. The District Court specifically noted that the nature and extent of the damage distinguished it from incidental damage, and that because Maetche was living there and was perfectly capable of contributing to the damage, she could be found guilty beyond a reasonable doubt. Thus, the District Court denied Maetche's motion. Maetche then rested without presenting evidence in her defense.

¶11 The District Court found Maetche guilty on both counts. The District Court expressed doubt that the act of signing a lease or rental agreement implies the contracting party is responsible for whatever happens to the property, but nonetheless concluded that Maetche was guilty of criminal mischief in this case. The District Court found that the direct and circumstantial evidence established that the damage happened over a two-week period, was purposeful in nature, and that Maetche was circumstantially responsible for it by virtue of her presence at the mobile home and the manner and extent to which the damage occurred.

6

¶12 Maetche now appeals the denial of her motion for a directed verdict. She maintains the District Court erred because the evidence presented by the State, viewed in a light most favorable to the prosecution, was not sufficient for any rational trier of fact to have found the essential elements of accountability for criminal mischief beyond a reasonable doubt. Maetche argues the State proved only her mere presence at the mobile home, and that she failed to disapprove or oppose the commission of the damage. Maetche asserts this was insufficient to support a criminal mischief conviction because the State must show she committed some affirmative act in order to support a conviction. The State maintains that the circumstantial evidence in this case was sufficient to sustain a verdict of guilt, and that the District Court did not err in denying Maetche's motion.

¶13 Thus, we state the issue on appeal as follows: *Did the District Court err in denying Maetche's motion to dismiss the count of criminal mischief?*

**STANDARD OF REVIEW**

¶14 A district court's denial of a motion for a directed verdict is reviewed de novo. *State v. Swan*, 2007 MT 126, ¶ 17, 337 Mont. 326, ¶ 17, 160 P.3d 511, ¶ 17. "A directed verdict is only appropriate if, viewing the evidence in a light most favorable to the prosecution, there is no evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Swan*, ¶ 16. When we considering the sufficiency of the evidence, we will not substitute our judgment for that of the trier of fact, because the trier of fact "is able to view firsthand the evidence presented, observe the demeanor of the witnesses, and weigh the credibility of each party." *State v. Shields*, 2005 MT 249, ¶ 20, 328 Mont. 509, ¶ 20, 122 P.3d 421, ¶ 20.

7

**DISCUSSION**

¶15 The District Court denied Maetche's motion for a directed verdict because the direct evidence showed that the damage was purposeful in nature—i.e., it was not merely incidental or due to normal wear and tear—and because Maetche could be found circumstantially responsible due to her presence in the mobile home and the nature and extent of the damage. Maetche argues this circumstantial evidence was insufficient to support a finding or verdict of guilt because it only establishes her mere presence in the mobile home and failure to disapprove or oppose the commission of the damage. Maetche argues that the State has possibly shown her negative acquiescence in the damage, but it presented no affirmative conduct on her part permitting her to be found guilty of criminal mischief under a theory of accountability. Because the District Court rejected the notion that Maetche had a duty to prevent the damage, she argues it was required to enter a finding that she committed some voluntary act to be found guilty of criminal mischief by accountability. Because the District Court did not enter such a finding, Maetche argues, it erred in denying her motion for a directed verdict.

¶16 We note as a preliminary matter that, although the charging documents in this case alleged Maetche was guilty of criminal mischief, and not accountability for criminal mischief, the State properly notified Maetche of its accountability theory, and did not need to expressly charge accountability in the charging documents to pursue this theory at trial. "Criminal accountability is not considered a substantive separate offense, but merely a conduit by which to find a person criminally liable for the acts of another." *State v. Abe*, 1998 MT 206, ¶ 31, 290 Mont. 393, ¶ 31, 965 P.2d 882, ¶ 31 (citing *State v.*

*Tower*, 267 Mont. 63, 67-68, 881 P.2d 1317, 1320 (1994)). Therefore, the question in this case is simply whether the State presented sufficient evidence by which a rational trier of fact could have found the essential elements of criminal mischief beyond a reasonable doubt.

¶17  Relying upon *State v. McComas*, 85 Mont. 428, 278 P. 993 (1929), Maetche correctly notes that mere presence, or failure to disapprove or oppose criminal conduct, is an insufficient basis upon which to base a finding of accountability for the criminal conduct of another. "Mere presence at the time a crime is committed, without interfering, does not make one a party to a crime unless his interference was a duty by reason of some position held by him, or unless noninterference was designed by him and operated as an encouragement or protection; nor does the mere concealment of knowledge that a crime is about to be committed constitute such person an accomplice no matter how reprehensible such conduct may be." *McComas*, 85 Mont. at 433, 278 P. at 995 (citations omitted).

¶18  Maetche also relies heavily on *State v. Johnston*, 267 Mont. 474, 885 P.2d 402 (1994), in support of her argument on appeal that accountability for criminal mischief was not established. In that case, we reversed a conviction of accountability for burglary, when the evidence indicated that the defendant was present at the scene of the crime, but did not positively show that he aided or abetted the commission of a burglary. *Johnston*, 267 Mont. at 481, 885 P.2d at 406. There, police apprehended a suspect in the process of burglarizing a church in Bozeman, Montana. After the suspect was in custody, police heard a nearby car honk its horn and flash its lights. When they went to investigate they

9

found defendant Johnston sitting in the passenger seat of a car, refusing to come out when ordered to do so by officers. He was physically removed from the car, wearing only his socks and smelling strongly of alcohol. Additionally, a key found on the burglary suspect fit the car's ignition. *Johnston*, 267 Mont. at 476-77, 885 P.2d at 403. From this evidence, the police concluded Johnston was an accomplice to the burglary.

¶19 Johnston was charged, convicted in district court, and appealed. We reversed his conviction on the grounds that the State failed to present any evidence demonstrating that he aided or abetted the commission of the burglary. *Johnston*, 267 Mont. at 480-81, 885 P.2d at 406. We noted that the evidence established Johnston's presence at the crime scene, but did not directly demonstrate that he drove to the crime scene, or that he took any positive actions during the burglary to assist or aid in its commission. We held that mere presence at a crime scene, or "mere knowledge that a crime is about to be committed does not make one an accomplice or accountable for that crime." *Johnston*, 267 Mont. at 481, 885 P.2d at 406.

¶20 Another case heavily relied upon by Maetche is *State v. Cochran*, 1998 MT 138, 290 Mont. 1, 964 P.2d 707. In that case, police in Harlem, Montana, observed an individual around 4:30 a.m., walking the streets and holding his right arm. *Cochran*, ¶¶ 3-4. When police saw this individual, they assumed he was holding his arm because it was cold, and did not investigate further. However, it turned out that he had been stabbed, and soon after his encounter with the police he sought medical care. *Cochran*, ¶ 7. Police later received information of a stabbing victim at a local hospital and went to investigate. They discovered the victim's identity and went to his trailer. *Cochran*,

¶¶ 8-9. When they approached the trailer, they noticed a trail of blood, but observed no signs of a struggle or fight outside the trailer. As police were investigating, they noticed the curtains open and close on one side of the trailer, but did not see a person actually moving them. *Cochran*, ¶ 9.

¶21 While still outside the trailer, police thought they heard persons fighting inside. *Cochran*, ¶ 10. They entered forcibly to find that the sound was in fact a television program. However, they also found three individuals in the trailer smeared with blood to varying degrees, and partially unconscious or asleep. *Cochran*, ¶¶ 11-12. Subsequent investigation led police to a bedroom where they found defendant Cochran lying on her stomach on the floor. She had blood on many areas of her body and appeared asleep. *Cochran*, ¶ 13. Police were eventually able to wake her and the other occupants of the trailer, and subsequently placed them under arrest when they refused to cooperate with police or answer questions about what happened. *Cochran*, ¶ 14. Cochran was subsequently charged with felony assault for stabbing the victim with a knife or scissors. *Cochran*, ¶ 17.

¶22 Before leaving the trailer, police collected numerous pieces of evidence which indicated the assault had occurred there. One of those was a pair of scissors. During Cochran's trial, one of the officers demonstrated how cuts discovered on Cochran's hands appeared to indicate that she had used the scissors to commit the assault on the victim. *Cochran*, ¶ 17. However, the victim denied he had been stabbed by Cochran and offered another version of events to describe how he had received his injuries, blaming them instead on two unknown assailants. *Cochran*, ¶¶ 18-22.

11

¶23     At the close of the State's case-in-chief, Cochran moved for a directed verdict on the felony assault charge. *Cochran*, ¶ 25. The district court denied the motion, and Cochran was later convicted. On appeal, she argued the district court erred in denying her motion. We agreed and reversed the district court, concluding there was insufficient evidence to establish that it was Cochran who actually committed the assault. *Cochran*, ¶ 29. We noted that no direct evidence linked her to the crime and that the circumstantial evidence indicated that Cochran was in the trailer but did not prove that she, as opposed to the other individuals found in the trailer, actually committed the assault. *Cochran*, ¶¶ 29-30. With respect to the significance of the blood discovered in the trailer and the scissors, we noted that police could not establish when Cochran got blood on her, nor did police establish that when Cochran received cuts on her hands she was in the process of assaulting the victim with the scissors. *Cochran*, ¶¶ 30-32. We also rejected an argument that Cochran's behavior at the crime scene was indicative of a consciousness of guilt sufficient to support her conviction. *Cochran*, ¶ 32.

¶24     Here, the circumstantial evidence places Maetche in the crime scene (the mobile home) while the crime (destruction of the mobile home) was occurring. An eyewitness observed Maetche and Kenny removing the washer and drier from the mobile home, thus contributing to its destruction. This, combined with the direct evidence of the purposeful nature of the destruction, was sufficient to permit a rational trier of fact to conclude that Maetche was criminally accountable for other destruction to the mobile home, and thus guilty of criminal mischief beyond a reasonable doubt. Although the removal of the washer and drier constituted a separate offense, her participation in the theft shows she

was involved in the destruction of the mobile home. Thus, unlike *Cochran*, where police had no direct evidence showing that Cochran was involved in the assault, and the victim himself testified she was not involved, and unlike *Johnson*, where there was no evidence the defendant aided and assisted at all during the burglary, there clearly was a circumstantial basis upon which a trier of fact could determine Maetche was also involved in destruction of other parts of the mobile home as well. The combination of direct and circumstantial evidence in this case was sufficient to sustain Maetche's conviction. *See State v. Southern*, 1999 MT 94, ¶ 92, 294 Mont. 225, ¶ 92, 980 P.2d 3, ¶ 92.

## CONCLUSION

¶25 On this evidence, and under these circumstances, a reasonable trier of fact could have found beyond a reasonable doubt that Maetche was accountable for criminal mischief. Thus, the District Court did not err in denying Maetche's motion for a directed verdict. We affirm.

/S/ PATRICIA COTTER

We concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE

13