DA 12-0632

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 337A

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

KANDICE TELLEGEN,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC 12-063B
Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender, Koan Mercer, Assistant Appellate Defender; Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant Attorney General; Helena, Montana

          Ed Corrigan, Flathead County Attorney, Alison Howard, Travis Ahner, Deputy County Attorneys; Kalispell, Montana

Submitted on Briefs:  September 26, 2013
Decided:  November 12, 2013
Amended:  January 29, 2014

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Judge Katherine Curtis of the Eleventh Judicial District Court, Flathead County, presided over the trial of Kandice Tellegen (Tellegen) for theft and accountability to burglary. The jury returned a verdict of guilty on both counts. Tellegen appeals from numerous alleged errors at trial.

¶2 We address the following issues on appeal:

*Issue One: Did the District Court err by instructing the jury on the theory of accountability when the State had not directly charged an accountability based offense?*

*Issue Two: Did Tellegen's counsel render ineffective assistance by offering a "conduct-based" definition of "purposely?"*

*Issue Three: Did Tellegen's counsel render ineffective assistance by failing to object to her theft conviction on the grounds that it violated Montana's statutory restriction on multiple charges?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On January 13, 2012, Tellegen and her friends Ashley Ekern (Ashley), Aaron Zelenik (Aaron), and Jeff Weldele (Jeff) spent the afternoon together. The group eventually decided that Jeff and Aaron would go and "scout a house" while Ashley and Tellegen waited at a fishing access near Kila, Montana. Ashley and Tellegen soon went looking for Jeff and Aaron, and spotted their car parked near an unknown house. Tellegen parked the car around back and approached the house. Jeff and Aaron then opened the garage door and told Tellegen to pull her car into the garage. Once inside, accounts differ as to whether Tellegen participated in loading the cars with items from the home.

2

¶4    The State filed an information charging Tellegen with accountability for burglary. The State later withdrew that charge and amended the information to charge Tellegen with burglary, conspiracy to commit burglary, and theft. After the presentation of evidence, the District Court and attorneys settled instructions. The State sought an accountability instruction for the burglary charge, which the District Court granted over Tellegen's objection. The District Court settled on an instruction defining the word "purposely" as a conduct-based mental state instead of a result-based mental state. Tellegen's attorney did not object to this instruction. Finally, the court's instructions defined theft as a predicate offense to burglary. The jury convicted Tellegen of both burglary and theft.

## STANDARDS OF REVIEW

¶5    We review jury instructions for abuse of discretion. *State v. Lacey*, 2012 MT 52, ¶ 15, 364 Mont. 291, 272 P.3d 1288. In considering whether a district court has correctly instructed the jury in a criminal case, we determine whether the instructions taken as a whole fully and fairly instructed the jury on the law applicable to the case. *State v. Hocter*, 2011 MT 251, ¶ 14, 362 Mont. 215, 262 P.3d 1089. Claims of ineffective assistance of counsel present mixed issues of law and fact which we review de novo. *State v. Clary*, 2012 MT 26, ¶ 12, 364 Mont. 53, 270 P.3d 88.

## DISCUSSION

¶6    *Did the District Court err by instructing the jury on the theory of accountability when the State had not directly charged an accountability based offense?*

¶7    The State's first information filed against Tellegen charged her with accountability for

3

burglary. The State then amended the charges to burglary, conspiracy to commit burglary, and theft, but eliminated the accountability for burglary charge. When the District Court began discussing jury instructions at the close of evidence, the State sought an instruction on the theory of accountability for burglary. The District Court admitted this instruction, citing to *Tower*, 267 Mont. at 68, 881 P.2d at 1320. Tellegen now asks us to revisit our holding in *Tower*, arguing that she was deprived of due process because she was not informed of the nature of the State's accusations against her.

## I. *Tower*'s Holding is Correct as a Matter of Law.

¶8 We decline to revisit *Tower*'s holding that accountability is not a separate charge requiring express notice from the prosecution. The Sixth Amendment requires that the State inform a criminal defendant of the nature and cause of the accusation against her. U.S. Const. amend. VI. To this end, Montana law requires that charging documents give "a plain, concise, and definite statement of the offense charged, including the name of the offense, whether the offense is a misdemeanor or felony, the name of the person charged, and the time and place of the offense as definitely as can be determined." Section 46-11-401(1), MCA.

¶9 We have consistently reaffirmed our holding in *Tower* that accountability is not a separate or different offense from the one charged, but rather, is "merely a conduit by which to find a person criminally liable for the acts of another." *State v. Maetche*, 2008 MT 184, ¶ 16, 343 Mont. 464, 185 P.3d 980; *State v. Abe*, 1998 MT 206, ¶ 31, 290 Mont. 393, 965 P.2d 882; *State v. Tower*, 267 Mont. 63, 68, 881 P.2d 1317, 1320 (1994); *In re B.D.C.*, 211

4

Mont. 216, 220-21, 687 P.2d 655, 657 (1984). In *Tower*, we held that this established legal principle allows defendants to predict that the State may pursue an accountability theory for a crime charged. *Tower*, 267 Mont. at 68, 881 P.2d at 1320. This desire for stability and predictability is the same interest fulfilled in adhering to *stare decisis*. *State v. Kirkbride*, 2008 MT 178, ¶ 13, 343 Mont. 409, 185 P.3d 340; *State v. Gatts*, 279 Mont. 42, 51, 928 P.2d 114, 119 (1996). In reaffirming *Tower*'s holding, we provide further stability and predictability to an already well-established principle of Montana law.

## II. *Tower***'s Holding Applies to This Case.**

¶10 Tellegen's case is indistinguishable from *Tower*. The amended information charged Tellegen with burglary and later the State pursued an accountability instruction for burglary. As the District Court noted, this is exactly the situation contemplated in *Tower*. ("I think the cases clearly apply to this case, and I think it's the law in the state, and I think I need to give [the accountability instruction].") Since accountability is not a separate offense from the charge of burglary, Tellegen was effectively put on notice of the accountability theory when she was first charged with burglary.

¶11 Tellegen's case is also similar to *Tower* in that she had notice of the nature of the State's allegations based on the State's case against her before and during trial. *State v. Murphy*, 174 Mont. 307, 311-12, 570 P.2d 1103, 1105 (1977); *Tower*, 267 Mont. at 68, 881 P.2d at 1320. The State originally charged Tellegen with accountability for burglary, and only withdrew that charge to replace it with burglary and conspiracy to commit burglary. The first charge should have given Tellegen notice that the State suspected her involvement

in aiding or abetting the burglary.

¶12    Moreover, the facts of Tellegen's case should have put her on notice that the State could pursue an accountability theory. In *State v. Medrano*, 285 Mont. 69, 74-75, 945 P.2d 937, 940 (1997), two defendants hit and kicked a victim, but co-defendants disputed which of the impacts resulted in serious bodily injury to the victim's spleen.  We held that Medrano had notice of the State's accountability theory because the defendants had been accused of acting in concert and were charged individually and jointly for the victim's injuries.  *Medrano*, 285 Mont. at 74-75, 945 P.2d at 940.  Tellegen was charged for her participation in a burglary committed by her and other defendants, and other defendants testified that she had participated in the crime by driving the car into the garage and assisting them in loading it with items.  Nothing in the facts of the case or in the State's charges can be interpreted to accuse Tellegen of acting alone, yet she now claims surprise at the State's accusation that she assisted others in committing the crime.  The circumstances surrounding the trial put Tellegen on notice that the State would pursue an accountability theory.

¶13    Finally, Tellegen mistakenly relies on *State v. Spotted Eagle*, 2010 MT 222, 358 Mont. 22, 243 P.3d 402.  In that case, the State initially charged Spotted Eagle with causing bodily injury to his partner, but later sought to instruct the jury under a different subsection of the same statute, requiring a finding of "reasonable apprehension of bodily injury." *Spotted Eagle*, ¶¶ 7-11.  Spotted Eagle's entire trial concerned his causing bodily injury, and he was only aware of the "apprehension" element once all evidence had been presented. *Spotted Eagle*, ¶ 14.  This shift constituted a substantive change in the essential elements of

6

the charge against him and we subsequently held that the instruction was a separate and distinct charge. *Spotted Eagle*, ¶¶ 11-13.

¶14   *Spotted Eagle* is distinguishable from Montana case law on accountability. Accountability is not a separate or different offense from the one charged, it is merely a theory to establish criminal liability for the charged offense. *Maetche*, ¶ 16; *Tower*, 267 Mont. at 68, 881 P.2d at 1320. Because accountability is not different or separate from the offense charged, its addition does not constitute a substantive shift in the charge. *Spotted Eagle* is therefore inapposite to the present case.

*Ineffective Assistance of Counsel Claims*

¶15   To determine whether an individual has received ineffective assistance of counsel, we use the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *State v. Miner*, 2012 MT 20, ¶ 11, 364 Mont. 1, 271 P.3d 56. Under this test, the defendant must demonstrate (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defendant. *Miner*, ¶ 11. If an insufficient showing is made regarding one prong of the test, there is no need to address the other prong. *Dawson v. State*, 2000 MT 219, ¶ 21, 301 Mont. 135, 10 P.3d 49.

¶16   Under *Strickland's* first prong, we examine whether counsel's conduct fell below an objective standard of reasonableness considering prevailing professional norms, and in the context of all circumstances. *Whitlow v. State*, 2008 MT 140, ¶ 14, 343 Mont. 90, 183 P.3d 861. Under *Strickland's* second prong, we examine whether there is a reasonable probability that counsel's lack of reasonable professional conduct renders the trial result unreliable or the

7

proceedings fundamentally unfair. *Miner*, ¶ 12. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2069.

¶17 *Did Tellegen's counsel render ineffective assistance by offering a "conduct-based" definition of "purposely?"*

¶18 Tellegen's attorney submitted an instruction defining "purposely" as a mental state wherein "it is the person's conscious objective to engage in conduct of that nature." The prosecution sought to convict Tellegen under Montana's accountability statute, which requires that a person acts "with the purpose to promote or facilitate . . . commission of the offense." Section 45-2-302, MCA. Tellegen argues that the instruction on "purposely" incorrectly defined it as a conduct-based mental state when the instruction for accountability calls for a result-based mental state.

¶19 In *State v. Andress*, 2013 MT 12, 368 Mont. 248, ___P.3d___, we considered an ineffective assistance of counsel claim where the defendant's attorney submitted instructions defining "purposely" as a conduct-based rather than result-based mental state. We found that the jury could have easily found Andress guilty under either standard, and therefore, he did not suffer prejudice from the erroneous instruction. *Andress*, ¶¶ 25-29.

¶20 In the instant case, a jury could easily find Tellegen guilty with a result-based mental state. Therefore, like in *Andress*, the instruction resulted in no prejudice to her position at trial. Tellegen testified that she and a friend arranged to wait at a fishing access while Jeff and Aaron "were going to go scout a house." After a long wait, Tellegen and her friend went

8

looking for Jeff and Aaron, eventually spotting their car in front of a house. Tellegen knew that "something was up," so she pulled her car behind the house and waited for Jeff and Aaron. Eventually, Jeff and Aaron opened the garage door and told her to bring the car into the garage. At this point, Tellegen testified that she knew she was participating in a crime. ("A: And so we went back up, we grabbed the car, we pull it in. And I'm starting to get really paranoid at that point . . . . Q: Did you know what they were doing? A: I figured it out by then.") Tellegen claims that once in the house, she never assisted in stealing items, "[b]ut then again I didn't stop it, like I should have." Tellegen's co-defendants, however, testified that Tellegen participated in loading the cars with items from the home.

¶21 A jury could easily find Tellegen guilty under either mental state based on the testimony presented at trial. The instruction held that burglary is committed when a person unlawfully enters a structure and commits an offense therein. Section 45-6-204, MCA. Accountability exists when a person aids, abets, agrees, or attempts to aid with the purpose to promote or facilitate the commission of an offense either before or during its commission. Section 45-2-302, MCA. Applying a result-based mental state, the jury would need to find that Tellegen acted with the purpose to promote or facilitate the unlawful entry into an occupied structure and an offense was committed therein. That fact is clear from the record; Tellegen was aware that her friends were "scouting a house" when she waited at the fishing access, she knew "something was up" when she spotted her accomplices' car and pulled behind the house, and when she drove her car into the home's garage she "figured it out by then" that a burglary was underway. These facts provide ample evidence for a jury to

9

conclude that Tellegen knew her actions would assist an unlawful entry wherein a theft occurred. Because a jury could have easily convicted Tellegen under either mental state instruction, her attorney's failure to object to the instruction caused no prejudice to her position at trial.

¶22 *Did Tellegen's counsel render ineffective assistance by failing to object to her theft conviction on the grounds that it violated Montana's statutory restriction on multiple charges?*

¶23 Montana law prohibits convicting a defendant on multiple offenses when one offense is included in the other. Section 46-11-410(2)(a), MCA. The prohibition on double jeopardy bars both multiple prosecutions and multiple punishments for the same offense. *State v. Guillame*, 1999 MT 29, ¶¶ 8, 19, 293 Mont. 224, 975 P.2d 312. In *State v. Russell*, 2008 MT 417, 347 Mont. 301, 198 P.3d 271, we considered a conviction for felony homicide and aggravated assault wherein aggravated assault was the predicate offense for the felony homicide charge. We held that the predicate offense was necessarily included in the greater offense of felony homicide. *Russell,* ¶¶ 23-24. The felony homicide statute allowed the State to charge Russell in a way that avoided the multiple charge problem, but the State's charges and jury instructions clearly identified aggravated assault as the predicate offense to felony homicide. *Russell*, ¶¶ 23, 26-29.

¶24 Montana's burglary statute provides that a person commits the offense when she knowingly enters or remains unlawfully in an occupied structure with the purpose to commit an offense therein. Section 45-6-204(1)(a), MCA. The Legislature amended the statute in 2009, adding that burglary is also committed when the person knowingly or purposely

10

commits any other offense within that structure. Section 45-6-204(1)(b). This alternative definition of burglary requires the State to prove that another offense took place once inside the dwelling, but relieves the State of proving the defendant's purpose at the time she unlawfully entered the dwelling.

¶25 The State charged Tellegen with burglary and later instructed the jury using language from § 45-6-204(1)(b), MCA. The instruction incorporated the theft charge into its language; "[T]he State must prove the following elements: One, that the Defendant knowingly entered and remained unlawfully in an occupied structure, and . . . that the Defendant purposely or knowingly committed the offense of theft therein." Tellegen was then convicted of both burglary and the predicate offense of theft. Theft was charged as a predicate offense to burglary, so Tellegen's conviction for both crimes constitutes a direct violation of the statutory restriction on multiple charges in § 46-11-410(2)(a), MCA. The State could have easily charged Tellegen with theft and burglary under § 45-6-204(1)(a), MCA, as that form of burglary requires no proof of a predicate offense. Like in *Russell*, however, we are bound by "the State's choice in framing the charges." *Russell*, ¶ 27. Because theft was charged as a predicate offense to this type of burglary, Tellegen's theft conviction should have been vacated on statutory grounds.

¶26 Counsel's failure to make a valid objection based on the statutory prohibition on multiple charges constitutes deficient performance under the first prong of *Strickland*. *State v. Becker*, 2005 MT 75, ¶ 20, 326 Mont. 364, 110 P.3d 1. Failure to make a valid objection to vacate a conviction prejudices the Defendant by affecting the outcome of the case, even if

11

the conviction is set to run concurrently with valid convictions in the case. *State v. Williams*, 2010 MT 58, ¶¶ 27-30, 355 Mont. 354, 228 P.3d 1127; *Ball v. United States*, 470 U.S. 856, 864-65, 105 S. Ct. 1668, 1673 (1985) ("The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence.") Tellegen's attorney failed to object to the theft conviction, for which Tellegen was sentenced to a concurrent prison term and charged additional fees, costs, and fines. The absence of objection and the subsequent sentence satisfy both prongs of *Strickland*.

## CONCLUSION

¶27 Tellegen's conviction for theft is reversed and remanded to the District Court for recalculation of conviction-based fees, costs, and fines. Tellegen's conviction and sentence for accountability to burglary are affirmed.

/S/ MICHAEL E WHEAT

We concur:

/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON