FILED

December 30 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0543

DA 13-0543

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 346

STATE OF MONTANA,

  Plaintiff and Appellee,

v.

PRESTON JAMES HANNA,

  Defendant and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 12-433
Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

  For Appellant:

  Jeanne M. Walker, Hagen & Walker, PLLC, Billings, Montana

  For Appellee:

  Timothy C. Fox, Montana Attorney General; C. Mark Fowler, Appellate
Bureau Chief, Helena, Montana

  Fred R. VanValkenburg, Missoula County Attorney; Jason Marks,
Jennifer Clark, Deputy County Attorneys, Missoula, Montana

Submitted on Briefs:   October 22, 2014
Decided:   December 30, 2014

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    A jury in the Fourth Judicial District Court convicted Preston Hanna of accountability for robbery.  The court sentenced Hanna to thirty years in Montana State Prison with ten years suspended and awarded restitution in an unspecified amount.  We restate the issues on appeal as follows:

> 1.    *Whether Hanna is entitled to a new trial because the District Court improperly instructed the jury on accountability for robbery.*
>
> 2.    *Whether the District Court erred in denying Hanna's motion to dismiss for insufficient evidence.*
>
> 3.    *Whether the District Court erred in sentencing Hanna.*

¶2    We affirm on the first two issues.  On the third, we remand to the District Court to determine the amount of restitution Hanna owes for the victim's medical expenses.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    At approximately 3:00 a.m. on September 7, 2012, a masked man entered Ole's convenience store in East Missoula dressed in all black and carrying a .22 caliber rifle. Store clerk Adam Gallegos was cleaning soda machines on the opposite side of the store from the front doors where the man entered.  The man demanded that Gallegos give him money out of the register.  Gallegos recognized the man as Chris Burch by his voice and shoes.  Gallegos had met Burch on previous occasions through mutual friends and Burch had been a customer at Ole's.  Gallegos told Burch no, that he would not give Burch the money out of the register, and turned his back to continue cleaning.  Burch took the rifle

2

to his shoulder, aimed, and fired. The bullet hit Gallegos in the upper right chest, entering his lung. Burch ran out the front doors. Gallegos survived.

¶4 Detectives located Burch in the morning. Burch said that he had been out drinking with Preston Hanna the night before and that Hanna was the one who entered Ole's with the rifle.

¶5 Detectives interrogated Hanna later that day after Hanna signed a form waiving his Miranda rights. Hanna acknowledged having been out with Burch and another acquaintance, Josh Smith, the night before. Burch was wearing black pants and a black shirt, Smith was in his supermarket work uniform, and Hanna was wearing a black shirt and swim shorts. Hanna stated that the three decided to drive up Deer Creek to go "plinking"—essentially, shooting random objects with Hanna's rifle. Hanna admitted to the detectives that he removed the temporary tag from his girlfriend's car before the three got in with Hanna driving. After the three started on their way, Burch asked Hanna to stop by Ole's. Because they were out of alcohol and it was past the hour when they could purchase beer, Hanna reported thinking that Burch might want to do a "beer run" (essentially, Burch would run into the store, grab a case of beer, and run out without paying). Hanna parked the car in front of Ole's. According to Hanna, Burch told him to shut off the headlights, and Burch tied black pants around his face to create a mask before exiting the car carrying Hanna's rifle. Hanna told the detectives that this was when he realized that Burch was doing something more than a beer run. Burch went into the store with the rifle and Hanna remained in the driver's seat with the car parked. A short time

3

later, Burch came out of the store, got in the car, and told Hanna that he had shot the clerk and to "drive, drive, drive." Hanna recounted that he sped off to his place, where he parked the car and decided to wait until the morning before figuring out what to do.

¶6 When detectives interviewed Burch again, he admitted that he was the one who entered Ole's and shot Gallegos.

¶7 The State charged Hanna by Information with accountability for attempted deliberate homicide and accountability for robbery. At a hearing on February 25, 2013, the State moved to dismiss the accountability for attempted deliberate homicide charge with prejudice. The State explained that its motion to dismiss the charge was unrelated to a plea agreement it had reached with Hanna. Hanna and the State presented their plea agreement to the court: Hanna would plead guilty to accountability for robbery and agree to testify against Burch in exchange for a twenty-year sentence to Montana State Prison with fifteen years suspended. Accordingly, Hanna pleaded guilty in open court and the District Court ordered a presentence investigation report. On May 1, 2013, the court and parties reconvened for sentencing. The District Court advised the parties that it would not follow the plea agreement and would instead impose a twenty-year sentence to Montana State Prison with no time suspended. The court asked Hanna if he wished to withdraw his guilty plea now that the court had rejected the agreement. Hanna decided to withdraw his plea and to proceed to trial.

¶8 At trial, neither Hanna nor Burch testified. The State called Josh Smith, the third person in the car on the night of the shooting. Smith testified that Hanna jokingly

4

suggested robbing Ole's and that, before the three went to Ole's, Hanna removed the temporary tag from the car. After Hanna parked outside Ole's, Smith said Hanna went to the back of the car, came back with the rifle, and handed it to Burch. Burch masked himself, went into the store, and returned a few moments later, telling Hanna to drive, and that he had shot the clerk after the clerk refused to give him money. Smith said Hanna sped off. During cross examination, Smith admitted that he acted as a lookout when Burch went into the store, that he blacked out for at least a portion of the night, and that, when originally questioned by the detectives, he did not disclose some information until they threatened him with prosecution.

¶9      The State also played a recording of Hanna's interrogation for the jury. At the close of the State's case, Hanna moved for a directed verdict, arguing that the State had presented insufficient evidence to convict him. The court denied the motion.

¶10      In his defense, Hanna presented two witnesses who testified that Hanna had been cited for "plinking" in the past. In closing, defense counsel emphasized that Hanna was drunk the night of the crime, that everything happened very fast once Hanna realized Burch was going into the store with the rifle, and that Hanna did not have time to extricate himself from the situation once the shooting occurred unexpectedly. Defense counsel argued that Hanna may have intended to facilitate a theft, but he did not intend to facilitate a robbery.

¶11      The jury returned a guilty verdict. The court sentenced Hanna to thirty years in Montana State Prison with ten years suspended, ordered Hanna to register as a violent

offender, and requested that "the Board of Pardons and Adult Probation Office review restitution due to Mr. Gallegos prior to [Hanna's] release."

¶12 Hanna appeals his conviction and sentence.

## STANDARDS OF REVIEW

¶13 We review preserved jury instruction challenges for an abuse of discretion coupled with a showing of prejudice to the defendant's substantial rights. *State v. Cybulski*, 2009 MT 70, ¶ 34, 349 Mont. 429, 204 P.3d 7. If a defendant had the opportunity but failed to object to a jury instruction at trial, we will not examine the issue unless it qualifies for plain error review. *State v. Birthmark*, 2013 MT 86, ¶ 11, 369 Mont. 413, 300 P.3d 1140.

¶14 We review de novo a district court's denial of a motion to dismiss for insufficient evidence. *State v. Kirn*, 2012 MT 69, ¶ 8, 364 Mont. 356, 274 P.3d 746. We determine whether, after viewing the evidence presented at trial in a light most favorable to the prosecution, a reasonable juror could have convicted the defendant. *Kirn*, ¶ 10.

¶15 A district court's compliance with sentencing statutes is generally a question of law that we review de novo. *State v. Cerasani*, 2014 MT 2, ¶ 11, ___ Mont. ___, 316 P.3d 819.

## DISCUSSION

¶16 *1. Whether Hanna is entitled to a new trial because the District Court improperly instructed the jury on accountability for robbery.*

¶17 Hanna was charged with and found guilty of accountability for robbery. A person commits robbery when, "in the course of committing a theft, the person: (a) inflicts bodily injury upon another; (b) threatens to inflict bodily injury upon any person or

6

purposely or knowingly puts any person in fear of immediate bodily injury; or (c) commits or threatens immediately to commit any felony other than theft." Section 45-5-401(1), MCA. "[A]ccountability is not a separate or different offense from the one charged, but rather, is 'merely a conduit by which to find a person criminally liable for the acts of another.'" *State v. Tellegen*, 2013 MT 337, ¶ 9, 372 Mont. 454, 314 P.3d 902 (citations omitted). An accomplice is accountable for another person's robbery when "either before or during the commission of [the robbery] with the purpose to promote or facilitate the commission, the [accomplice] solicits, aids, abets, agrees, or attempts to aid the other person in the planning or commission of the [robbery]." Section 45-2-302(3), MCA.

¶18 The District Court instructed the jury that a person commits robbery if, "in the course of committing a theft, the person: purposely or knowingly inflicts bodily injury upon another; OR purposely or knowingly threatens to inflict bodily injury upon any person; OR purposely or knowingly puts any person in fear of immediate bodily injury[.]" Hanna objected to this instruction at trial and now appeals it. Hanna argues that he was charged with accountability for robbery under a single theory: the principal's commission of a theft coupled with a purposeful or knowing infliction of bodily injury on another. Hanna posits that he was not charged with accountability for robbery by means of a theft coupled with either the threat to inflict bodily injury or the fear of immediate bodily injury. In essence, Hanna suggests that the jury instructions permitted the jury to

7

convict him of accountability for robbery under sub-elements of robbery with which he was never charged.[1]

¶19 A criminal defendant has the right to notice of the crime under which he will be prosecuted. *State v. Spotted Eagle*, 2010 MT 222, ¶ 9, 358 Mont. 22, 243 P.3d 402 ("An [I]nformation must reasonably apprise the defendant of the charges against him so that he may have the opportunity to prepare and present his defense."). That right is violated when the Information charges the defendant of one crime but the jury is permitted to convict the defendant of another. *Spotted Eagle*, ¶ 15. In *Spotted Eagle*, the State charged the defendant by Information with violating § 45-5-206, MCA—Montana's law prohibiting assault on a partner or family member—because the defendant "purposely or knowingly caused bodily injury to his partner[.]" *Spotted Eagle*, ¶ 2. At trial, the court instructed the jury that it could find the defendant guilty of violating § 45-5-206, MCA, if the defendant "caused bodily injury *or* reasonable apprehension of bodily injury" to his partner. *Spotted Eagle*, ¶ 3 (emphasis supplied). We held that the instruction "improperly amended the charge" against the defendant by permitting conviction under an offense sub-element that the defendant was never charged with violating. *Spotted Eagle*, ¶ 11.

¶20 By contrast, the State's Information in this case charged Hanna with robbery in general, citing only § 45-5-401, MCA, and not any particular subsection of the robbery

---

[1] Relatedly, Hanna also briefly argues that he could not be charged with a different type of robbery than Burch. Hanna cites no authority supporting this contention and we decline to consider it. M. R. App. P. 12(1)(f).

statute. Unlike the Information in *Spotted Eagle* that limited the charge to causing bodily injury to the victim, the Information in this case did not so limit the robbery charge. The charge was general, alleging that Hanna, "before and/or during the commission of the offense of Robbery, aided or abetted Christopher Burch in the commission of the offense of Robbery." Further, the affidavit accompanying the Information alleged that a masked man entered a store with a rifle, told an employee to give him the store's money, and then shot the employee. The affidavit also included allegations that Hanna had removed the license plate from his car before driving Burch to Ole's; that Hanna drove the vehicle and waited in the parking lot with the lights out and engine running while Burch entered with the rifle; that Hanna drove off in a hurry with Burch in the car after Burch returned and reported that he had shot the clerk; that the robbery was Hanna's idea; and that Hanna had provided Burch with the rifle. The Information and affidavit provided Hanna with reasonable notice of a charge of accountability for robbery under any of § 45-5-401's sub-elements. The robbery jury instruction patterned on the statute did not improperly amend the charge against Hanna.

¶21 Hanna maintains that the robbery instruction was improper because it did not instruct the jury that it must reach unanimity with regard to the specific element of robbery that it determined Hanna purposefully aided or abetted. Hanna cites *State v. Hardaway*, 2001 MT 252, 307 Mont. 139, 36 P.3d 900. In that case, the court instructed the jury that it could convict the defendant of burglary for entering a home "to commit either the offense of theft or the offense of sexual assault," but did not instruct the jury

9

that it would have to reach a unanimous verdict on either alternative. *Hardaway*, ¶¶ 9, 71. We reversed the verdict because "[u]nanimity requires more than a conclusory agreement that the accused is guilty of some charged offense; the jury must be in agreement as to the principal factual elements underlying a specific offense." *Hardaway*, ¶¶ 70, 72.

¶22 Hanna failed to object to the robbery instruction's lack of a unanimity requirement. We refrain from considering issues raised for the first time on appeal. *State v. Robertson*, 2014 MT 279, ¶ 16, 376 Mont. 471, 336 P.3d 367. Under § 46-16-410(3), MCA, "[a] party may not assign as error any portion of the instructions or omission from the instructions unless an objection was made specifically stating the matter objected to, and the grounds for the objections, at the settlement of instructions." As addressed above, Hanna's objection to instruction number twelve—the robbery instruction—was based on the purported lack of notice of the robbery sub-elements found in the instruction. Hanna never mentioned, much less "specifically stat[ed]," that there was a unanimity problem with the instruction. Section 45-16-410(3), MCA. Accordingly, Hanna's objection to the robbery instruction was insufficient to preserve the unanimity issue for appeal.

¶23 We do occasionally review unpreserved issues under the doctrine of plain error review, but only when (1) "the claimed error implicates a fundamental right," and (2) "the claimed error would result in a manifest miscarriage of justice, leave unsettled

10

the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process." *Robertson*, ¶ 32 (citation omitted).

¶24 The State argues that there was no error because this case involves accountability rather than principal liability. But accountability is "merely a conduit" for liability and not a "separate or different offense." *Tellegen*, ¶ 9. Thus, charging someone with accountability for a substantive offense does not affect the elements of the substantive offense. Whether charged as a principal or an accomplice, a defendant is entitled to a unanimous verdict on each principal element of the offense. *See Hardaway*, ¶ 72. While the District Court instructed the jury broadly that the "law requires a jury verdict in this case that is unanimous," the court did not instruct the jury that it had to agree on the principal elements of Hanna's robbery offense. Even though the jury was not instructed in this regard, we conclude that plain error review is not warranted. Viewing the claimed error in the context of the evidence presented at trial and the arguments of the parties, we are not convinced that the failure to provide a unanimity instruction compromised the "justness, fairness, or integrity of [Hanna's] trial." *Robertson*, ¶ 40. No one disputed that Burch purposely or knowingly caused bodily injury to Gallegos, and no one claimed that Hanna intended for Gallegos to be shot. Hanna's defense was that he did not know about Burch's plan until after the shooting and did not have a chance to withdraw from the criminal enterprise after that occurred. The instruction on the three methods of committing robbery did not compromise the integrity of Hanna's trial, which focused on

11

Hanna's intention to facilitate the commission of the robbery even after the store clerk had been shot and even though Hanna did not know in advance that was going to happen.

¶25 Hanna also argues that instruction number thirteen was improper. Instruction number thirteen directed the jury that, "The ensuing flight is considered part and parcel of the robbery until such time as the criminal purpose is completed. A person acting as a getaway driver may become liable for robbery." Hanna argues that the instruction's second sentence derives from dicta in *State v. Case*, 190 Mont. 450, 621 P.2d 1066 (1980) and was thus inappropriate to use in a jury instruction. The State responds that Hanna waived this issue on appeal by failing to object to it at trial. As the State apparently recognizes, however, Hanna was in the process of objecting to the instruction when the District Court cut him off. Thus, we will review the issue.

¶26 In reviewing a claim of instructional error, "we determine whether the instructions taken as a whole fully and fairly instructed the jury on the law applicable in the case." *Tellegen*, ¶ 5. Hanna does not challenge the instruction's first sentence directing that "[t]he ensuing flight is considered part and parcel of the robbery until such time as the criminal purpose is completed." Nor could he: this instruction is essentially identical to one we upheld in *State v. Kills on Top*, 243 Mont. 56, 63-64, 793 P.2d 1273, 1298 (1990). Viewed in context, the getaway driver sentence merely extrapolates upon the preceding sentence and the principle that a person is accountable if he purposefully facilitates a crime by aiding or abetting it. Section 45-5-401(3), MCA, is explicit that "in the course of committing a theft" includes acts that occur "in flight after the attempt or

12

commission . . . ." The getaway driver sentence was a full and fair explication of the law in the context of this case. The District Court did not abuse its discretion by giving instruction number thirteen.

¶27   2.   *Whether the District Court erred in denying Hanna's motion to dismiss for insufficient evidence.*

¶28   Hanna argues that the District Court erred in denying his motion for a directed verdict.[2] Hanna argues that the State failed to present sufficient corroborating evidence showing that Hanna was an accomplice to the robbery. Hanna admits that he drove Burch away from the scene of the crime, but argues that this admission does not support holding him liable for the robbery because the robbery already had ended by the time he drove away. In his reply brief, Hanna also cites *United States v. Rosemand*, ___ U.S. ___, 134 S. Ct. 1240 (2014), for the proposition that he needed to have known in advance that Burch was armed to be convicted as an accomplice to Burch's crime.

¶29   "A person may not be found guilty of an offense on the testimony of one responsible or legally accountable for the same offense . . . unless the testimony is corroborated by other evidence that . . . tends to connect the defendant with the commission of the offense." Section 46-16-213, MCA. Corroborative evidence must "'(1) be independent, (2) point toward the defendant's guilt, and (3) provide a legally sufficient connection between the defendant and the offense.'" *State v. Berger*, 1998 MT 170, ¶ 28, 290 Mont. 78, 964 P.2d 725 (citation omitted).

_____

[2] Under § 46-16-403, MCA, this is better termed a motion to dismiss for insufficient evidence. *See Kirn*, ¶ 8.

13

¶30   Hanna argues that because Smith admitted that he acted as a lookout and thus as an accomplice to the robbery, Smith's testimony could not stand alone in convicting Hanna. But Smith's testimony did not stand alone. The jury heard the recording of Hanna's interrogation. In his interview with the detectives, Hanna admitted that he removed the temporary tag from the car; that he knew that something other than a simple beer run was happening when Burch got out of the vehicle with a rifle and a mask; that he remained outside the store in the car while Burch went inside; that he would have made Burch split the proceeds of the crime had Burch come out of Ole's with money; and that Burch told Hanna that he had shot the clerk before Hanna sped off from the scene of the crime with Burch in the car.

¶31   After hearing these admissions, a reasonable juror could infer that Hanna knew Burch entered Ole's with a rifle in hand, intending to commit a theft. A reasonable juror could infer that when a person enters a convenience store with a rifle in hand intending to steal, that person is threatening to inflict bodily injury on anyone who stands in his way. Moreover, a reasonable juror could infer that Hanna knew Burch inflicted bodily injury on another while committing the theft because Burch told Hanna as much when he got back in the car. A reasonable juror also could conclude that Hanna purposely facilitated the commission of the robbery by participating in the flight after commission of the attempted theft.

¶32   We see no conflict between these conclusions and the recent *Rosemand* case. In *Rosemand*, the Supreme Court held that a defendant could be convicted of aiding and

abetting a violation of 18 U.S.C. § 924(c)—which criminalizes carrying or using a gun in connection with a drug trafficking offense—only when the defendant knew that one of his confederates would carry a gun at the offense. *Rosemand*, ___ U.S. at ___, 134 S. Ct. at 1249. This holding followed from the general accomplice liability principle that an accomplice's intent to facilitate the substantive offense's commission "must go to the specific and entire crime charged[.]" *Rosemand*, ___ U.S. at ___, 134 S. Ct. at 1248 (citing, e.g., Wayne R. Lafave, *Substantive Criminal Law* ¶ 13.2(c) (2d ed. 2003)). Applying that principle to robbery under § 45-5-401, MCA, means that, either before or during Burch's crime and with the purpose to facilitate it, Hanna had to have knowledge that Burch was going to inflict, threaten to inflict, or cause someone to fear infliction of bodily injury. Unlike the statute at issue in *Rosemand*, carrying or using a gun is not an element of robbery under § 45-5-401, MCA. As noted, a reasonable juror could infer that Hanna had the requisite knowledge after he saw Burch go into Ole's with the rifle and then heard Burch explain that he had shot Gallegos.

¶33 A reasonable juror could take Hanna's act of driving Burch away from the scene of the crime—executed after Hanna knew what had occurred—as aiding or abetting the commission of the crime. As the jury properly was instructed, "[t]he ensuing flight is considered part and parcel of a [r]obbery until such time as the criminal purpose, including carrying away of the spoils of the crime, is completed." *Kills on Top*, 243 Mont. at 63, 793 P.2d at 1298. There were no spoils here, but there was a robbery and a flight, and Hanna facilitated Burch's getaway only a few moments after Burch shot

15

Gallegos and before Burch had reached a point of "seeming security." *Case*, 190 Mont. at 455, 621 P.2d at 1069. The jury could consider Hanna's actions as the getaway driver as evidence that Hanna aided and abetted the robbery, and that he did so with the purpose of facilitating the robbery's commission.

¶34    *3.    Whether the District Court erred in sentencing Hanna.*

¶35    Hanna has three issues with his sentence. First, Hanna argues that the District Court erred by failing to specify the amount of restitution Hanna owes to Gallegos for medical expenses. The State concedes the District Court's error on this point. At the post-trial sentencing hearing, the District Court requested that, upon Hanna's eventual release from prison, "the Board of Pardons and Adult Probation Office . . . look at the restitution that is due to Mr. Gallegos." The court repeated this request in its written judgment.

¶36    "[A] sentencing court shall, as part of the sentence, require an offender to make full restitution to any victim who has sustained a pecuniary loss . . . ." Section 46-18-241(1), MCA. "Pecuniary loss" includes "future medical expenses that the victim can reasonably be expected to incur as a result of the offender's criminal conduct . . . ." Section 46-18-243(1)(c), MCA. "[T]he amount of restitution must be stated as a specific amount of money." *State v. Heafner*, 2010 MT 87, ¶ 7, 356 Mont. 128, 231 P.3d 1087; *see* § 46-18-244(1), MCA. The District Court's request that correctional authorities determine restitution upon Hanna's release lacks statutory basis. With the help of a presentence investigation and report, a court must determine a definitive amount of

restitution while permitting Hanna to "assert any defense" that he could raise in a civil action. Sections 46-18-242(1), -244(2), MCA. We therefore remand to the District Court to specify the amount of restitution Hanna owes Gallegos, including the amount of future medical expenses that Gallegos reasonably may be expected to incur as a result of the robbery.

¶37 Second, Hanna argues that, by imposing a greater sentence after trial than it said it would impose before trial, the District Court punished Hanna for exercising his right to go to trial. Hanna invokes our decisional law that "when a [d]istrict [c]ourt becomes involved in the plea negotiations and an offer is made, any difference in the sentencing after trial must point out the factors [that] justify the increased sentence." *State v. Hall*, 2003 MT 253, ¶ 42, 317 Mont. 356, 77 P.3d 239. Here, at Hanna's sentencing hearing following the entry of his guilty plea, the court notified the parties that it would "not follow the plea bargain agreement," and would impose "a twenty-year sentence to the Montana State Prison" with no time suspended. In light of its rejection of the plea agreement, the court permitted Hanna to withdraw his plea and proceed to trial. *See* § 46-12-211(4), MCA (directing that, upon rejecting a plea agreement that exchanges a guilty plea for a specific sentence, a court permit the defendant to withdraw his plea and advise the defendant that the case's disposition may be less favorable than was contemplated in the plea agreement). Hanna elected to withdraw his plea and proceed to trial.

¶38 Simply because there is a disparity between the sentence offered and the sentence imposed after a withdrawn plea does not mean that the defendant has been punished for exercising his right to a jury trial. *State v. Baldwin*, 192 Mont. 521, 526, 629 P.2d 222, 225 (1981). We require that a district court justify an increased sentence following trial only if (1) the district court did increase the sentence following trial, and (2) the district court became "involved in the plea negotiations." *Hall*, ¶ 42. On the first requirement, the State argues that the pre-trial and post-trial sentences are consistent because, in either case, Hanna would serve twenty years in prison. But there is a discrepancy between the two sentences. At the pre-trial sentencing hearing, the court told Hanna that "the sentence, that the [c]ourt would impose, is a twenty-year sentence to Montana State Prison." At the post-trial sentencing hearing, the court sentenced Hanna to "thirty years at the Montana State Prison" and specified that "[t]he last ten years of that sentence is suspended." Suspended time is nonetheless sentenced time. *See Alabama v. Shelton*, 535 U.S. 654, 662, 122 S. Ct. 1764, 1770 (2002) (holding that "[a] suspended sentence is a prison term imposed for the offense of a conviction" and thus implicates the Sixth Amendment right to counsel). The facts of this case satisfy the first requirement.

¶39 Regarding the second requirement, we have considered whether a district court became involved in plea negotiations in four cases. In *Hall*, at a pre-trial omnibus hearing, the court indicated that it was aware of ongoing plea negotiations and offered the defendant a sentence in exchange for a guilty plea. The court then imposed a greater sentence after the defendant went to trial. *Hall*, ¶ 40. In *State v. Tate*, 196 Mont. 248,

18

639 P.2d 1149 (1982), the defendant informed the judge mid-trial that he was having second thoughts about whether he should proceed or plead guilty. The court offered the defendant a sentence in exchange for pleading guilty yet imposed a greater sentence after the defendant chose to proceed with the trial. *Tate*, 196 Mont. at 249, 639 P.2d at 1149. And in *State v. Baldwin*, 192 Mont. 521, 629 P.2d 222 (1981), the court sent a letter to the defendant offering a sentence in exchange for a guilty plea but then imposed a greater sentence after the defendant proceeded to trial. *Baldwin*, 192 Mont. at 522-24, 629 P.2d at 223-24. In each of these cases, we held that the court became involved in plea negotiations. *Hall*, ¶ 43; *Tate*, 196 Mont. at 251, 639 P.2d at 1150; *Baldwin*, 192 Mont. at 527-28, 629 P.2d at 226. By contrast, in *State v. Brown*, 2003 MT 166, 316 Mont. 310, 71 P.3d 1215, we determined that "[e]xcept for being apprised of the plea negotiations at a pretrial conference, there is no evidence that the District Court was involved in the plea negotiation process." *Brown*, ¶ 27. Thus, we concluded that the court was not required to justify a harsher sentence after trial. *Brown*, ¶¶ 31-32.

¶40 The principle that we deduce from these cases is that a district court is not "involved in plea negotiations" if those negotiations already have concluded before the court offers a sentence. Here, without any apparent involvement by the court, Hanna and the State bargained and reached a plea agreement. The District Court's only involvement was to inform Hanna that it rejected the terms of that agreement and would instead impose a twenty-year sentence with no time suspended. By then, plea negotiations already had ended. A district court's rejection of a negotiated plea agreement is not

19

involvement in plea negotiations. Accordingly, the District Court was not required to explain specifically why the sentence was greater after trial. The District Court gave specific reasons for the sentence imposed, both during the sentencing hearing and in the written judgment, in compliance with § 46-18-115(6), MCA.

¶41    The third sentencing issue that Hanna raises is whether it was proper for the District Court to order Hanna to register as a violent offender. The Sexual or Violent Offender Registration Act [SVORA] mandates that a "sexual or violent offender" report personal information to be kept in a registry. Section 46-23-504(1), MCA. A "sexual or violent offender" is a person who has been convicted of a "sexual or violent offense." Section 46-23-502(10), MCA. A "violent offense" means "any violation of or attempt, solicitation, or conspiracy to commit a violation of" a number of enumerated crimes, including robbery. Section 46-23-502(13)(a), MCA. Hanna argues that because "accountability" is not listed in this definition of a violent offense, his accountability for robbery conviction does not qualify as a violent offense requiring registration.

¶42    As stated, however, accountability is not a "separate or different offense," but "merely a conduit by which to find a person criminally liable for the acts of another." *Tellegen*, ¶ 9. Accordingly, the term "violation" incorporates the liability of an accomplice just as it incorporates a principal's liability. Section 46-23-502(13)(a), MCA.

¶43    Hanna cites *State v. Ferguson*, 2005 MT 343, 300 Mont. 103, 126 P.3d 463, to argue that the District Court was required to find that Hanna used or possessed a "deadly weapon" in order to sentence Hanna as a violent offender. *Ferguson*, ¶ 112. This

20

argument is misplaced.  In *Ferguson*, we considered whether the defendant's conviction for attempted robbery qualified under § 46-18-104(2)(a)(i), MCA, as a "crime of violence."  That section defines a "crime of violence" as a "crime in which an offender *uses or possesses and threatens to use* a deadly weapon during the commission or attempted commission of a crime[.]"  Section 46-18-104(2)(a)(i), MCA (emphasis added).  A § 46-18-104(2)(a)(i) "crime of violence" and a § 46-23-502(13)(a) "violent offense" are different terms with different definitions and significances.  Specifically, if a person commits a "crime of violence"—which requires the use of a deadly weapon—he or she no longer may qualify as a nonviolent offender for sentencing purposes and a court therefore need not consider alternatives to imprisonment.  Sections 46-18-104(3), -225(1), MCA.  Commission of a "violent offense"—which does not require the use of a deadly weapon—determines whether the offender must register under SVORA.  Section 46-23-504(1), MCA.  The issue here is whether it was proper to require Hanna to register under SVORA.  Because Hanna committed a "violent offense," it was proper.

## CONCLUSION

¶44   We affirm Hanna's conviction and remand the District Court's judgment with instructions to enter an amended judgment specifying the total amount of restitution.


/S/ BETH BAKER

We concur:

/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ JIM RICE