THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.* WIL-
LIAM E. JACKSON, DEFENDANT AND APPELLANT.

No. 14143.
Submitted Sept. 11, 1978.
Decided Jan. 24, 1979.
589 P.2d 1009.

Michael J. Whalen (argued), Billings, for defendant and appellant.

Mike Greely, Atty. Gen., Helena, Sheri K. Sprigg, Asst. Atty. Gen. (argued), Helena, Harold F. Hanser, County Atty., Billings, C. David Gorton, Deputy County Atty. (argued), Billings, for plaintiff and respondent.

MR. JUSTICE SHEA delivered the opinion of the Court.

Defendant appeals from his conviction of felony theft, entered after a jury verdict, Thirteenth Judicial District, Yellowstone County. Defendant is currently serving a ten-year sentence in the state penitentiary at Deer Lodge.

The events leading to defendant's conviction began on August 11, 1977, when Sheila Jeszenka discovered that someone had broken into her Billings, Montana home. The intruder(s) entered the home while Mrs. Jeszenka was at work, stole a six-piece stereo, three pieces of turquoise jewelry, a woman's light colored coat and a bottle containing a coin collection.

On August 12, 1977, Donald Jeszenka (hereafter Jeszenka), Sheila's estranged husband, had a chance meeting with the defendant and a man named Frank Sosa Jr. During this meeting, Sosa offered to sell Jeszenka some turquoise jewelry, a woman's coat and a stereo system. This offer led Jeszenka to believe that Sosa and his friends were responsible for the break-in at the Jeszenka home.

Jesenka, hoping to recover the property stolen from his home, arranged to meet Sosa at 6:00 p.m. in Tally's Place, a Billings bar. Sosa assured Jeszenka that the merchandise would be available for his inspection.

Once his meeting with Sosa had ended, Jeszenka did two things: first, he persuaded his friend, John Holbrook, to accompany him to Tally's Place; second, he reported his plan to Officer William Garvin of the Billings Police Department. Officer Garvin approved Jeszenka's plan and arranged to keep the meeting under surveillance by means of a "stake out" and an electronic recording device. The recording device was concealed on the person of John Holbrook and was capable of transmitting Holbrook's conversations for a distance of two or three blocks.

Jeszenka and Holbrook arrived at Tally's Place shortly before 6:00 p.m. Frank Sosa was not present when they arrived, but the defendant informed Jeszenka "he might be able to take care of them." Defendant led Jeszenka and Holbrook out of the bar and into the parking lot behind Tally's Place. There, defendant produced three pieces of turquoise jewelry which had been stored in the glove compartment of a parked car. Defendant offered to sell the jewelry to Jeszenka for $100.00 an item. Jeszenka testified that the jewelry displayed by defendant had been stolen from his wife Sheila the previous day.

Jeszenka and Holbrook did not purchase the turquoise jewelry from defendant; they told him they were only interested in buying a stereo and/or a woman's coat. At this point, Frank Sosa Jr. emerged from Tally's Place and became involved in the transaction. Sosa told Jeszenka and Holbrook that he did not have the stereo or coat with him, but, if they would be patient he could have the items by the end of the evening. He suggested Jeszenka and Holbrook return home and await his telephone call. Sosa and the defendant then left Tally's Place in Sosa's car.

At approximately 9:30 p.m., defendant telephoned Holbrook's home and asked Jeszenka and Holbrook to meet him at Tally's Place. When they arrived at Tally's Place, it was agreed that Holbrook would take a "short ride" with defendant, while Jeszenka was to remain at Tally's Place with Frank Sosa.

Defendant and Holbrook used Sosa's car to drive to Cobb Field, which is located on the north side of Billings. Defendant parked the

car under a street light, opened the trunk, and revealed a six-piece stereo and a woman's white coat. Defendant told Holbrook the stereo could be purchased for $700.00 "*cash*".

Since Holbrook had only $350.00 in cash, he and the defendant returned to Tally's Place to rejoin Sosa and Jeszenka. Upon their arrival in Tally's parking lot, defendant reopened the trunk and offered the woman's coat to Jeszenka for $100.00. At this point, the Billings Police, who had been staked out across the street, moved in and arrested the parties. The police seized the turquoise jewelry, the stereo and the woman's coat. Later, after obtaining defendant's permission to search his personal automobile, the police also recovered the bottle and coin collection taken from the Jeszenka home.

Defendant was found guilty after a jury trial. He was sentenced by Judge Sande to ten years in the state penitentiary, without the possibility of parole.

The following issues were properly raised by defendant's appeal:

(1) Was venue proper in Yellowstone County?

(2) Did the District Court err by admitting evidence which showed defendant had committed wholly independent crimes?

(3) Did the prosecution establish defendant's guilt beyond all reasonable doubt?

(4) Did the District Court properly instruct the jury?

In addition to issues 1 through 4, defendant's counsel, during oral argument, asked the Court to determine whether *State v. Brackman* (1978), . . . Mont. . . . , 582 P.2s 1216, 35 St.Rep. 1103, has any bearing on defendant's appeal. We will discuss this query before proceeding to defendant's other issues.

■ Assuming arguendo that defendant made a timely presentation of his constitutional issue, we hold that *Brackman* has no impact on the present appeal.

In *Brackman*, this Court was asked to review a District Court order which suppressed State evidence obtained through the use of an electronic surveillance device. We agreed with the District

Court and held the "tape recordings and transcripts" were properly suppressed. Our decision was based on 1972 Mont.Const. Art. II, § 10.

In the present case the State did not introduce, or attempt to introduce, any evidence obtained through the use of the electronic surveillance unit. For this reason, the *Brackman* decision does not affect defendant's trial and conviction.

■ We will now discuss the four issues raised in defendant's original briefs. We begin our discussion with the venue issue. The applicable statute provides:

"When a person obtains property by theft, robbery or deceptive practices, *he may be tried in any county in which he exerted control over such property.*" Section 95-408, R.C.M.1947.

This Court has recently held that venue, although not an element of the crime, is a jurisdictional fact that must be proved at the trial the same as any other material fact in a criminal prosecution. *State v. Preite* (1977), 172 Mont. 318, 564 P.2d 598.

We have also held that:

"No positive testimony that the violation occurred at a specific place is required, *it is sufficient if it can be concluded from the evidence as a whole that the act was committed in the county where the indictment is found.* Circumstantial evidence may be and often is stronger and more convincing than direct evidence. . . . If, from the facts and evidence, the only rational conclusion which can be drawn is that the crime was committed in the state and county alleged, *the proof is sufficient.*" *State v. Campbell* (1972), 160 Mont. 111, 118, 500 P.2d 801 (Citing, *State v. Wardenberg* (1968), 261 Iowa 1395, 158 N.W.2d 147).

While the prosecution at defendant's trial did not produce any testimony specifically directed to the venue issue, a reading of the transcript shows the only rational conclusion is that defendant exercised control over Jeszenka's property in Yellowstone County. Jeszenka, Holbrook, and the police officers all testified that defendant had the stolen property in his possession in Tally's parking lot. The bartender, Paz Rosalez, testified as follows:

"Q. Please state your name for the jury? A. Paz Rosalez.

"Q. Mr. Rosalez, what do you do for a living? A. I am a bartender at Tally's place.

"Q. I am sorry, where was that at? A. Tally's place.

"Q. What is the address of that bar? A. 2610 North Minnesota Avenue.

"Q. *Here in Billings?* A. *Yes, sir.*" (Emphasis added.)

When testimony establishes that an act took place in a particular city, this Court may take judicial notice of the county where the city is located. *State v. Williams* (1949), 122 Mont. 279, 202 P.2d 245. In the present case, it is clear that defendant exerted control over the Jeszenka's property in Tally's parking lot. Based on Paz Rosalez' testimony and *State v. Williams,* supra, we can take judicial notice that Tally's parking lot is located in Yellowstone County. Accordingly, venue for defendant's trial was properly established in Yellowstone County.

Defendant's second assignment of error questions the propriety of admitting certain testimony and demonstrative evidence. The prosecution, although only charging defendant with the theft of a six-piece stereo and a woman's coat, introduced testimony and evidence which related to a stolen coin collection and three pieces of turquoise jewelry. Defendant argues that all the testimony and evidence related to the jewelry and coin collection should have been excluded because it was evidence of "another wholly independent crime." We disagree.

We recognize the general rule that when a defendant is put on trial for one offense, he should be convicted, if at all, by evidence which shows that he is guilty of that offense alone. Evidence which in any manner shows, or tends to show, he has committed another crime *wholly independent,* even though it is a crime of the same sort, is irrelevant and inadmissible, subject to exceptions not pertinent here. *State v. Frates* (1972), 160 Mont. 431, 436, 503 P.2d 47. The reason for this rule is obvious: a defendant is entitled to be informed of the crime charged, in order to prepare his defense, proof of other crimes subject him to surprise and defense

of multiple collateral or unrelated issues. *State v. Nicks* (1958), 134 Mont. 341, 332 P.2d 904.

■ In this case, the prosecution did not introduce evidence of other "unrelated" or "wholly independent" crimes. The prosecution only sought to prove that defendant was exercising unauthorized control over various items, all of which belonged to Sheila and Donald Jeszenka. Defendant's possession of the coin collection and the turquoise jewelry was inextricably related to the property referred to in the charging information. We are not, therefore, involved with the introduction of evidence of wholly independent or unrelated crimes. The evidence was properly admitted.

For his third assignment of error, defendant contends the prosecution failed to prove, beyond a reasonable doubt, that he was guilty of *felony theft.*

Section 94-6-302, R.C.M.1947, defines theft as follows:

*"Theft.* (1) A person commits the offense of theft when he purposely or knowingly obtains or exerts unauthorized control over property of the owner and:

"(a) has the purpose of depriving the owner of the property;

"(b) purposely or knowingly uses, conceals, or abandons the property in such manner as to deprive the owner of the property; or

"(c) uses, conceals, or abandons the property knowing such use, concealment, or abandonment probably will deprive the owner of the property.

". . .

"A person convicted of the offense of theft of property exceeding $150 in value or theft of any commonly domesticated hoofed animal shall be imprisoned in the state prison for any term not to exceed 10 years."

Defendant contends the State failed to show: (1) that the property found in defendant's possession belonged to the Jeszenkas; (2) that the property in question was valued at greater than $150.00; and (3) that the defendant acted with knowledge and purpose to deprive the Jeszenkas of their property. We find no merit to these contentions.

■ Concerning the identification of the property, Donald Jeszenka, Sheila Jeszenka and John Holbrook all testified that the property found in defendant's possession was the same property that had been stolen from the Jeszenka home on August 11, 1977. Each of these witnesses "positively" identified the stereo turntable by a distinctive half-moon crack located on the turntable's dustcover. And, although the other stereo components and the woman's coat did not bear such readily identifiable marks, the witnesses still identified those items as belonging to Donald and Sheila Jeszenka.

While defendant concedes that the stereo turntable was adequately identified, he argues that the absence of identifiable marks on the other parts of the stereo and on the woman's coat, make it impossible to "positively" identify those items. In essence, defendant argues that a "positive" identification of stolen property cannot be made unless the property carries some unique marking. Based on this theory, defendant argues that State exhibits 1, 3, 4, 5, 6 and 7 could not be used as a basis for his conviction. We find no merit in defendant's argument.

■ Identification of property which bears no identifying marks is seldom capable of strict proof. But, if the owner of the stolen property can testify that the recovered property is similar in appearance to their property, then the property has been sufficiently identified to become evidence upon which a conviction can be based. The identifying witness is of course subject to cross-examination, but anything elicited on cross-examination goes to the weight to be given the identification rather than its admissibility. See: *Tatum v. United States* (D.C.Mun.1952), 88 A.2d 495.

■ Defendant's next argument concerns the valuation of the property found in his possession. Montana has established $150.00 as the line of demarcation between felony and misdemeanor theft. Section 94-6-302(4), supra. Defendant claims the prosecution failed to establish the value of the property found in his possession to be at least $150.00. A reading of the transcript does not support this claim.

The testimony establishes that the woman's coat had been pur-

chased new in 1975 at a cost of $140.00. The testimony also showed that the stereo was purchased new in 1976 at a cost of $1,595.00. Barring rapid obsolescence or destruction, it is inconceivable that these items could have depreciated to a point where they were worth less than $150.00. We·note moreover, that the defendant himself helped to establish a value for these items which the jury could consider. Donald Jeszenka testified that defendant offered to sell the woman's coat for $100.00. John Holbrook testified that defendant was willing to sell the stereo for $700.00. The prices established by defendant are tacit admissions that the property was valued at $150.00 or more. Hence, the prosecution presented sufficient evidence to allow the jury to determine if a misdemeanor or a felony was committed.

■ Defendant next contends that the State failed to prove he acted with purpose or knowledge. The prosecution had the burden to show that he purposely or knowingly obtained or exerted unauthorized control over the Jeszenka's property, with an intent to deprive them of the same. Section 94-6-302, R.C.M.1947. Defendant's counsel (defendant did not testify) took the position in the District Court, and during oral arguments to this Court, that defendant believed all of the property in his possession belonged to Frank Sosa Jr., (the villain of the case). Defense counsel concludes that defendant did not "purposely or knowingly" deprive the Jeszenka's of their property.

■ When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence. Section 94-2-101(27), R.C.M.1947. And, as this Court held in *State v. Madden* (1954), 128 Mont. 408, 416, 276 P.2d 974, 978:

"*Criminal Intent.* The element of felonious intent in every contested criminal case must necessarily be determined from the facts and circumstances of the particular case,—this for the reason that criminal intent, being a state of mind, is rarely susceptible of direct or positive proof and therefore must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.

". . . 'We have repeatedly held that knowledge or intent is seldom capable of direct proof. It is usually inferred from the proven surrounding circumstances.'

". . . 'Where intent is necessary in the commission of a crime, it has been held that it may be proven by circumstances and by the action of the party at the time. The question of intent is a question for the jury. It may be inferred by them from what accused does and says and from all the facts and circumstances involved in the transaction. (Citing authorities.) One will be held accountable for the logical and ordinary consequences resulting from his acts.' "

The jury in the present case found that defendant acted knowingly and purposely to deprive the Jeszenkas of their property. This Court will not upset the jury verdict if there is substantial evidence to support the jury's decision. *State v. Stoddard* (1966), 147 Mont. 402, 412 P.2d 827.

There was ample evidence introduced to show the jury that defendant acted with purpose and knowledge.

Defendant admitted to Donald Jeszenka that he knew the turquoise jewelry was "hot". The jury could logically infer that he also knew the stereo and the coat were "hot". Additionally, defendant's furtive actions when he displayed the stereo to John Holbrook were indicative of knowledge and purpose. If defendant did not know the items were stolen, he would have exhibited them in a less isolated spot. Finally, as we held in *State v. Gray* (1968), 152 Mont. 145, 447 P.2d 475, "possession of stolen goods is a circumstance to be considered in connection with other circumstances in determining guilt."

Defendant's remaining assignments of error all relate to the jury instructions given by the district judge.

Defendant contends the trial court erred when it refused to give an instruction setting forth the need for concurrence between a criminal act and criminal intent. It is well settled however, that jury instructions must be read as a whole and, it is not reversible error for a district judge to refuse an instruction which is merely repetitive of another instruction. *State v. Coleman* (1978),

177 Mont. 1, 579 P.2d 732. Here, two instructions touched on the need for concurrence between act and intent, and there was no error in refusing the proposed instruction.

Next, defendant complains because the court refused to give his "specific intent" instruction. In *State v. Klein* (1976), 169 Mont. 350, 547 P.2d 75, we held that the giving of an instruction defining "knowledge" and "purpose" under the new criminal codes eliminates the need for an additional specific intent instruction. The jury was properly instructed on "knowledge and purpose", and therefore, it was not error for the district judge to refuse the specific intent instruction.

The District Court was also correct in refusing defendant's circumstantial evidence instruction. Instructions on circumstantial evidence are appropriate only if the prosecution's case is made wholly by the use of circumstantial evidence. *State v. Mah Sam Hing* (1931), 89 Mont. 178, 186, 295 P. 1014. If any direct evidence is introduced against the defendant, it is not error to refuse a circumstantial evidence instruction. *State v. White* (1965), 146 Mont. 226, 239, 405 P.2d 761. Here, there was direct evidence to support the conviction.

Both Donald Jeszenka and John Holbrook saw defendant exercising unauthorized control over the items in question and they testified that defendant verbally offered to sell this property to them. This is direct evidence which eliminates the need for a circumstantial evidence instruction.

In defendant's last assignment of error, he contends the evidence justified the submission of a misdemeanor theft instruction to the jury. In a recent case, *State v. Radi* (1978), 176 Mont. 451, 578 P.2d 1169, we held that an instruction on a lesser offense must be given if there is evidence introduced which could lead a jury to *rationally believe* that the defendant was guilty of the lesser offense and innocent of the greater offense. We stressed in *Radi* that the belief must be rational.

In the present instance, there was no evidence introduced which would lead a jury to rationally believe that the stereo and the

woman's coat were worth less than $150.00. In fact, the uncontroverted testimony showed the property was valued at between $800.00 and $1,600.00. Thus, an instruction on misdemeanor theft was not required.

We find no merit to defendant's contentions. Accordingly, the judgment is affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY, HARRISON and SHEEHY concur.