FILED

04/20/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0639

DA 18-0639

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 94

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

WILLIAM FREDERICK LAMOUREUX,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC 17-633(A)
Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Alexander H. Pyle, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

            Austin Knudsen, Montana Attorney General, Jonathan M. Krauss, Assistant
Attorney General, Helena, Montana

            Travis R. Ahner, Flathead County Attorney, Andrew Clegg, Deputy County
Attorney, Kalispell, Montana

Submitted on Briefs:  February 3, 2021

Decided:  April 20, 2021

Filed:

                   _____
                             Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 A jury found William Frederick Lamoureux guilty of three felony counts of Privacy in Communications, in violation of § 45-8-213(1)(a), MCA (2017).[1] The charges arose out of three threatening phone calls Lamoureux made to the victims: one to Ashley Dunigan (Ashley) and two to Sam McGough (Sam). Because Lamoureux had at least one prior conviction for Privacy in Communications, the instant convictions became felonies. Lamoureux appeals his convictions, which were entered in the Eleventh Judicial District Court, Flathead County. We affirm.

¶2 Lamoureux raises the following four issues on appeal:

1. *Is the Privacy in Communications statute, § 45-8-213(1)(a), MCA, facially overbroad or does it constitute a content-based restriction on speech in violation of the First Amendment to the United States Constitution and Article II, Section 7 of the Montana Constitution?*

2. *Does a person violate the Privacy in Communications statute when the threatening communication was made about someone other than the recipient of that communication?*

3. *Was there sufficient evidence to conclude there was jurisdiction when the threatening communication was made to a person located outside of Montana?*

4. *Did the District Court fully and fairly instruct the jury in accordance with the evidence presented?*

---

[1] The Legislature revised parts of § 45-8-213(1)(a) in 2019. *See* § 45-8-213(1)(a), MCA (2019 Mont. Laws ch. 56, § 1). The State's Information alleged Lamoureux violated subsection (1)(a) in 2017. Unless otherwise noted, this Opinion refers to subsection (1)(a), and all other sections of the Code, as they existed in 2017.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 Lamoureux's ex-wife, Stacey McGough (Stacey), owns a jewelry store in Whitefish that her parents previously owned. At the time of trial, Stacey's father, Sam, still owned the building in which the jewelry store is located. Both Stacey and Lamoureux were residents of Flathead County—Stacey lived in Whitefish, and Lamoureux lived between Whitefish and Columbia Falls. Stacey and Lamoureux were married for 16 years and had two children together, A. and H.

¶4 On September 20, 2017, Ashley, one of Stacey's employees, was working at the jewelry store when Lamoureux called the store. On the call, Lamoureux was "aggressive, angry, [and] drunk" and he told Ashley he wanted Sam's and H.'s phone numbers. Ashley told him she was not able to give him the numbers and Lamoureux responded, "Fuck you, I'm going to get you fired." He dropped the phone and hung up but called the store again. He reiterated that he wanted the phone numbers, and Ashley responded that she could not give him the phone numbers. He shouted "bullshit" and then told Ashley he "was going to kiss [her] and come down to the store and slap [her] ass." Ashley was afraid and concerned that Lamoureux was going to come to the store, so she and another employee immediately closed and locked the store early, called the police, and let the neighboring store owner know what was happening.

¶5 On October 12, 2017, Sam received a call from Lamoureux. Lamoureux had been drinking and sounded angry. Lamoureux told Sam, referring to Stacey, "I want to kill that fucking cunt. I'm going to stuff her in a culvert for the skunks to eat her. I'm going to kill her now." Sam considered Lamoureux's language profane, offensive, threatening, and

3

harassing. He contacted the Whitefish police and asked them to go to the jewelry store, walk Stacey to her car, and make sure that she was safe.

¶6 On November 7, 2017, Sam received another phone call from Lamoureux. At the time, Sam was in New York. This time, Lamoureux said,

> I'm going to go kill her now. I want to go shoot her in the face with my .45 and watch her eyes bulge out. I'm going to kill that fucking cunt and then I'm going to put her in the garbage bin in back and set it on fire.

Lamoureux said he was on his way there: "I'm on my way, I'm going to kill her." He told Sam he was going to destroy the jewelry store building: "I'm going to burn your building down so that she won't have a job." Again, Sam testified that the language was profane, threatening, offensive, and harassing. Sam perceived the threats to be very real. He knew Lamoureux owned a .45, and he assumed Lamoureux was on his way to Stacey's from his home. Accordingly, Sam called Stacey and law enforcement.

¶7 The State charged Lamoureux in an Amended Information, with three counts of felony Privacy in Communications. Lamoureux filed two motions to dismiss before trial: one contending that the State had failed to state an offense in Count II—relating to the October 12, 2017 phone call—because the threatening communication was made about someone other than the recipient of the communication; and another—as to all three counts—contending § 45-8-213(1)(a), MCA, was unconstitutionally overbroad under the "freedom of speech" clauses of the Montana and United States Constitutions. At the close of evidence, Lamoureux also moved to dismiss Count III, regarding his second communication to Sam, arguing there was insufficient evidence for the jury to conclude the offense occurred in Montana. The District Court denied all three motions.

4

¶8     The District Court instructed the jury that Lamoureux was charged by Amended Information with three counts of Privacy in Communications. The court gave four instructions relevant to the issues presented on appeal: the specific and entire statutory language for the offense of Privacy in Communications, and three separate instructions on the elements for each offense. The District Court instructed the jury that the State must prove Lamoureux knowingly or purposely communicated by electronic communication with the victim, and that Lamoureux acted knowingly or purposely as to each offense. As to Count I, the court instructed that the State must also prove "the Defendant knowingly or purposely used obscene, lewd, or profane language, or suggested lewd and lascivious acts, with the purpose to harass, annoy or offend Ashley Dunigan." As to Count II, the court instructed that the State also must prove: "[t]hat in threatening to kill Stacey McGough, the Defendant knowingly or purposely used obscene, lewd, or profane language with the purpose to harass, annoy or offend Sam McGough." Finally, as to Count III, the court instructed that the State also must prove:

> That in threatening to kill Stacey McGough, the Defendant knowingly or purposely used obscene, lewd, or profane language with the purpose to harass, annoy or offend Sam McGough; or the Defendant knowingly or purposely threatened to inflict injury or physical harm to the property of Sam McGough with the purpose to harass, annoy or offend Sam McGough.

¶9     The jury found Lamoureux guilty on all three counts. Lamoureux appeals his convictions.

## STANDARDS OF REVIEW

¶10     This Court reviews de novo the denial of a motion to dismiss in a criminal case. *State v. Dugan*, 2013 MT 38, ¶ 13, 369 Mont. 39, 303 P.3d 755. This Court's review of

5

constitutional questions is plenary and we examine a district court's interpretation of the law for correctness. *State v. Sedler*, 2020 MT 248, ¶ 5, 401 Mont. 437, 473 P.3d 406. A court's determination of its jurisdiction is a conclusion of law, which this Court reviews de novo to determine whether the court's interpretation of the law is correct. *Stanley v. Lemire*, 2006 MT 304, ¶ 52, 334 Mont. 489, 148 P.3d 643. A district court has broad discretion in formulating jury instructions, and our standard of review is whether the court abused that discretion. *State v. Spotted Eagle*, 2010 MT 222, ¶ 6, 358 Mont. 22, 243 P.3d 402.

## DISCUSSION

¶11 *1. Is the Privacy in Communications statute, § 45-8-213(1)(a), MCA, facially overbroad or does it constitute a content-based restriction on speech in violation of the First Amendment to the United States Constitution and Article II, Section 7 of the Montana Constitution?*

¶12 The statute under which Lamoureux was charged provides that a person commits the offense of violating Privacy in Communications if the person knowingly or purposely:

> with the purpose to terrify, intimidate, threaten, harass, annoy, or offend, communicates with a person by electronic communication and uses obscene, lewd, or profane language, suggests a lewd or lascivious act, or threatens to inflict injury or physical harm to the person or property of the person. The use of obscene, lewd, or profane language or the making of a threat or lewd or lascivious suggestions is prima facie evidence of an intent to terrify, intimidate, threaten, harass, annoy, or offend.

Section 45-8-213(1)(a), MCA.

¶13 Lamoureux challenges the constitutionality of the statute, arguing it is overbroad and violates free speech rights guaranteed by the Montana and United States Constitutions.

6

He argues the statute criminalizes substantial constitutionally-protected speech and, therefore, the State's prosecution under the statute is void.

¶14 "In reviewing constitutional challenges to legislative enactments, the constitutionality of a legislative enactment is prima facie presumed, and 'every intendment in its favor will be made unless its unconstitutionality appears beyond a reasonable doubt.'" *State v. Egdorf*, 2003 MT 264, ¶ 12, 317 Mont. 436, 77 P.3d 517 (quoting *T & W Chevrolet v. Darvial*, 196 Mont. 287, 292, 641 P.2d 1368, 1370 (1982) (citations omitted). Thus, the party challenging a statute bears the burden of proving it is unconstitutional beyond a reasonable doubt and, if any doubt exists, it must be resolved in favor of the statute. *Egdorf*, ¶ 12 (citing *State v. Price*, 2002 MT 229, ¶ 28, 311 Mont. 439, 57 P.3d 42 (*rev'd in part on other grounds*)).

¶15 An overbroad statute is one that is designed to burden or punish activities that are not constitutionally protected but includes within its scope activities that are protected by the First Amendment. *State v. Nye*, 283 Mont. 505, 515, 943 P.2d 96, 102 (1997). The crucial question is whether the statute sweeps within its prohibitions what may not be punished constitutionally. *Dugan*, ¶ 52 (citing *Whitefish v. O'Shaughnessy*, 216 Mont. 433, 440, 704 P.2d 1021, 1026 (1985) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 114-15 (1972))).

¶16 "A statute is unconstitutionally overbroad only if its overbreadth is not only 'real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" *State v. Spottedbear*, 2016 MT 243, ¶ 15, 385 Mont. 68, 380, P.3d 810 (quoting *State v. Lilburn*, 265 Mont. 258, 264-65, 875 P.2d 1036, 1040 (1994) (quoting *Broadrick v.*

7

*Oklahoma*, 413 U.S. 601, 615 (1973))). A party facially challenging a statute on overbreadth grounds must prove there is a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court . . . ." *Lilburn*, 265 Mont. at 265, 875 P.2d at 1041 (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984)). The test for overbreadth, therefore, "is not whether hypothetical remote situations exist, but whether there is a significant possibility that the law will be unconstitutionally applied. *Lilburn*, 265 Mont. at 269, 875 P.2d at 1043 (citing *Broadrick,* 413 U.S. at 615).

¶17 When there is no realistic danger or significant possibility that First Amendment protections will be meaningfully compromised, this Court has held that any unconstitutional application of a statute should be addressed under an as-applied challenge on a case-by-case basis. *Spottedbear*, ¶ 16. "To the extent that the statute may reach constitutionally protected expression, we conclude, as did the Supreme Court in *Broadrick*, U.S. at 615-16, that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations where the statute is assertedly being applied unconstitutionally." *Lilburn*, 265 Mont. at 270, 875 P.2d at 1044. Lamoureux makes only a facial overbreadth challenge and does not challenge the statute as applied to his own conduct.

¶18 We addressed the constitutionality of § 45-8-213(1)(a), MCA, in *Dugan* and determined the statute, after striking one invalid provision, was not facially overbroad in violation of free speech protections guaranteed by the Montana and United States Constitutions. While concluding that the prima facie evidence provision of the statute was

8

facially overbroad, we held that neither the Montana nor the United States Constitutions prohibit the State from prosecuting a person for using certain types of language with the *purpose* to terrify, intimidate, threaten, harass, annoy, or offend the listener. *Dugan*, ¶¶ 50, 64 (emphasis added). This Court concluded that the Privacy in Communications statute does not run afoul of free speech principles because "the requirement that the State prove [the defendant's] statement was made with a specific intent removes the danger of criminalizing protected speech." *Dugan*, ¶ 50. This Court recognized that while First Amendment jurisprudence dictates that the State may not generally proscribe the use of language simply because it is objectively offensive or because the language chosen actually offended a particular person (*Dugan*, ¶ 45), it may proscribe the knowing or purposeful use of speech that is communicated electronically for the purpose of terrifying, intimidating, threatening, harassing, annoying, or offending the recipient of the communication. *Dugan*, ¶ 64.

¶19 Hence, in *Dugan*, this Court rejected the argument that Lamoureux makes on appeal: that § 45-8-213(1)(a), MCA, is unconstitutionally overbroad by prohibiting protected speech. The statute is, as this Court and the United States Supreme Court have said long before *Dugan*, "narrowly tailored to accomplish the State's asserted purpose— caustic, abusive, and robust speech is fully protected until it rises to the level of threats which cause harm to society." *State v. Lance*, 222 Mont. 92, 105, 721 P.2d 1258, 1267 (1986). The statute "curtails no more speech than is necessary to accomplish its purpose." *Lance*, 222 Mont. at 105, 721 P.2d at 1267. The statute does not suppress or infringe upon Lamoureux's, or any person's, freedom to engage in the uninhibited, robust, and wide-open

9

expression of ideas or a suitable level of discourse within the body politic.  But Lamoureux did not engage in protected speech when he called Ashley and Sam.  While the Montana Constitution guarantees that Lamoureux be "free to speak or publish whatever he will on any subject," § 45-8-213(1)(a), MCA, ensures that he be "responsible for all abuse of that liberty."  Mont. Const. art. II, § 7.

¶20     Nonetheless, Lamoureux argues our holding in *Dugan* was manifestly wrong and asks that we now reconsider and overrule our decision.  Lamoureux maintains that the statute's intent element cannot render the law constitutional.  However, the United States Supreme Court and other federal and state courts have similarly upheld statutes including specific intent elements as constitutional.  *See Virginia v. Black*, 538 U.S. 343, 363 (2003) (the "First Amendment permits Virginia to outlaw cross burnings done with the intent to intimidate" a person or group of persons); *United States v. Waggy*, 936 F.3d 1014 (9th Cir. 2019) (upholding as constitutional a statute that prohibited making telephone calls with the intent to harass, intimidate, or torment another; although the statute at issue contained a speech component, the defendant was convicted for his specific conduct); *United States v. Lampley*, 573 F.2d 783 (3d Cir. 1978) (upholding a conviction under a federal telephone harassment statute, against a First Amendment challenge because of the intent requirement); *State v. Kipf*, 450 N.W.2d 397 (Neb. 1990) (upholding a statute that criminalized calling another and using indecent, lewd, lascivious, or obscene language with the intent to terrify, intimidate, threaten, harass, annoy, or offend); *State v. Hagen*, 558 P.2d 750 (Ariz. Ct. App. 1976) (upholding a statute that made it unlawful to telephone another and use any obscene, lewd, or profane language or suggest a lewd or lascivious act

10

with the intent to terrify, intimidate, threaten, harass, annoy, or offend). Many of these cases invalidated prima facia provisions establishing intent while leaving untouched parts of the statutes that criminalize speech used with a specific intent or purpose. These decisions illustrate that the intent or purpose of a person's speech can form the basis for excluding a person's speech from First Amendment protections.

¶21 Lamoureux next asserts that the statute is unconstitutional because it is a content-based restriction on speech. Under the First Amendment of the United States Constitution and Article II, § 7, of the Montana Constitution, a law regulating expressive content is "presumptively invalid." *United States v. Stevens*, 559 U.S. 460, 468 (2010). A regulation is content-based if the law "on its face, draws distinctions based on the message a speaker conveys," such as "the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163, 171 (2015) (citations omitted). Lamoureux argues § 45-8-213(1)(a) is content-based because the statute classifies electronic communications by the topic discussed or the idea or message expressed. He argues by its very terms, subsection (1)(a) targets speech with the content of "obscene," "profane," "lewd," "lascivious," or "threat[ing]" language and that the statute does not register speech without that content. We find this argument unavailing and without merit. As we have previously stated, the statute at issue criminalizes intentionally harmful activities—communication with the purpose to terrify, intimidate, threaten, harass, or offend—not merely disagreeable communication. Obscene communications made with criminal intent are restricted not because their content communicates any particular idea but because of the purpose for which it is communicated. *Dugan v. State*, 451 P.3d 731, 739 (Wyo. 2019)

11

(citations and internal quotation marks omitted). The fact that § 45-8-213(1)(a), MCA, identifies obscene, profane, lewd, and lascivious language does not render it a content-based regulation on speech rather than a regulation of conduct; that conduct being that the speech was uttered with the purpose and specific intent of intimidating, threatening, or harassing another person. Such laws are constitutional because they are narrowly tailored to control conduct without reaching a substantial amount of protected speech. *Dugan v. State*, 451 P.3d 731, 739 (Wyo. 2019).

¶22 We take the opportunity to note that the statements Lamoureux made to both Ashley and Sam were debasing, callous, and malicious. Although quite expressive, his statements were void of any social value whatsoever and they bore little to "no essential part of any exposition of ideas." *Chaplinsky v. N.H.*, 315 U.S. 568, 572 (1942). His statements served one purpose: to threaten and harass Ashley and Sam. Such speech is not in any proper sense "communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument." *Chaplinsky*, 315 U.S. at 572. "An individual cannot be permitted to terrorize members of the public through threats, and then claim protection from prosecution under the First Amendment." *Lance*, 222 Mont. at 104-05, 721 P.2d at 1267. Consequently, Lamoureux could not have prevailed on an as-applied challenge to the statute, even had he raised one.

¶23 The District Court correctly denied Lamoureux's motion to dismiss on constitutional grounds. Section 45-8-213(1)(a), MCA, is not facially overbroad nor is it restrictive of content-based speech in violation of the "freedom of speech" clauses of the

12

Montana and United States Constitutions. The court based its decision on our holdings in *Dugan*, which Lamoureux has not shown to be manifestly wrong.

¶24 *2. Does a person violate the Privacy in Communications statute when the threatening communication was made about someone other than the recipient of that communication?*

¶25 When interpreting a statute, this Court will not look beyond its plain language if the language is clear and unambiguous. *State v. Jardee*, 2020 MT 81, ¶ 8, 399 Mont. 459, 461 P.3d 108. We construe a statute by reading and interpreting the statue as a whole, without isolating specific terms from the context in which they are used by the legislature. *Jardee*, ¶ 8 (citations and quotation marks omitted).

¶26 Count II alleged that Lamoureux, "knowingly or purposely, and with the purpose to intimidate, threaten, and harass, communicated with another, Sam McGough, by telephone and threatened to kill his daughter . . . ." The affidavit filed in support of the Amended Information further alleged that Lamoureux "used threatening and offensive language [and] told Sam he was planning to find Sam's daughter, Lamoureux's ex-wife, Stacey McGough, and kill her." In his motion to dismiss Count II and on appeal, Lamoureux argues that Count II failed to state an offense because the threat made to Sam on the phone to kill his daughter did not amount to a threat to "inflict injury or physical harm" to Sam's "person or property," as Sam was the person to whom he communicated the threat. Lamoureux argues he threatened to inflict injury or physical harm on Stacey alone, "a person other than the communication's recipient." Lamoureux maintains a threat to someone other than the person receiving the communication is not a threat to the "person or property" of the person receiving the communication.

13

¶27 The District Court correctly denied the motion finding that Lamoureux's sole focus on whether the threat "to inflict injury or physical harm" language included a third party placed too narrow a reading on the plain language of the statute. The District Court correctly pointed out that the statute also encompassed other acts of prohibited communication including the use of "obscene, lewd, or profane language," or suggesting a "lewd or lascivious act." Certainly, a threat to kill another's daughter constitutes the use of obscene or profane language used to terrify, intimidate, threaten, harass, or at the very least, annoy, or offend a person. The plain statutory language reasonably encompasses threats such as those made by Lamoureux.

¶28 Before trial, Lamoureux again questioned the District Court whether a threat to injure someone's daughter was a sufficient allegation to say that there was a threat to injure or physically harm Sam himself. The District Court reiterated that "part of the way this is charged is broader than the threats to [Sam]," and that "the threat to kill his daughter is sufficient . . . to demonstrate the purpose to . . . not just threaten but intimidate [and] harass [Sam] through the threats to his daughter." The District Court's interpretation was correct based on the plain language of the statute and is consistent with the statutory definition of "threat" as applied to criminal offenses in general. "Threat" means "a menace, however communicated, to: inflict physical harm on the person threatened *or any other person* or on property; . . . commit a criminal offense; . . . [or] expose a person to hatred, contempt, or ridicule." Section 45-2-101(76)(a), (c), (e), MCA, (emphasis added). The plain meaning of "threatens to inflict injury" by the statute's terms and substance, must include the threat of "killing" that person's daughter. Section 45-8-213(1)(a), MCA.

14

¶29 The District Court correctly interpreted the statute and denied Lamoureux's motion to dismiss Count II. Lamoureux's threat to kill Sam's daughter fell within the plain meaning and substance of the statute proscribing "threat[s] to inflict injury" that are communicated electronically with the purpose to terrify, intimidate, threaten, harass, annoy, or offend.

¶30 *3. Was there sufficient evidence to conclude there was jurisdiction when the threatening communication was made to a person located outside of Montana?*

¶31 Jurisdiction addresses a court's authority to adjudicate a proceeding. *City of Helena v. Frankforter*, 2018 MT 193, ¶ 18, 392 Mont. 277, 423 P.3d 581. Lack of jurisdiction is a "nonwaivable defect and must be noticed by the court at any time during the pendency of a proceeding." Section 46-13-101(3), MCA. Unlike venue, a defendant may not waive, nor stipulate to, a court's jurisdiction over his or her criminal case. *Frankforter*, ¶ 18. Thus, in criminal proceedings, the prosecution must establish that the trial court has the authority, or jurisdiction, to preside over the trial. *Frankforter*, ¶ 18. We have held that "[n]o positive testimony that the violation occurred at a specific place is required; it is sufficient if it can be concluded from the evidence as a whole that the act was committed in the county where the indictment is found." *State v. Jackson*, 180 Mont. 195, 200, 589 P.2d 1009, 1013 (1979) (*rev'd in part on other grounds by Frankforter*) (emphasis omitted); *see State v. Dahlin*, 2004 MT 19, ¶¶ 8, 12, 319 Mont. 303, 84 P.3d 35 (a reasonable person, "after viewing the evidence in the light most favorable to the prosecution," could conclude that felony theft was committed in Golden Valley County). Circumstantial evidence can establish jurisdiction—"if, from the facts and evidence, the

15

only rational conclusion [that] can be drawn is that the crime was committed in the state and county alleged, the proof is sufficient." *Jackson*, 180 Mont. at 200, 589 P.2d at 1013 (emphasis omitted) (quoting *State v. Campbell*, 160 Mont. 111, 118, 500 P.2d 801, 805 (1972) (*rev'd in part on other grounds by Frankforter*)).

¶32 Montana's criminal procedure statutes governing jurisdiction provide that a person is subject to prosecution in Montana for an offense "committed either wholly or partly within the state." Section 46-2-101(1)(a), MCA. "An offense is committed partly within this state if either the conduct that is an element of the offense or the result that is an element occurs within the state." Section 46-2-101(2), MCA. To establish jurisdiction, the State had to prove either the conduct or result proscribed by § 45-8-213(1)(a), MCA, occurred in Montana. Here, the "result," in a Privacy in Communications prosecution, corresponds to the reception of an electronic communication, and the "conduct" corresponds to the making of the electronic communication. *See* § 45-8-213(1)(a), MCA.

¶33 Lamoureux's conduct establishes jurisdiction in this case. "Acts done outside a jurisdiction but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power." *Strassheim v. Daily*, 221 U.S. 280, 285 (1911). Section 45-8-213(1)(a), MCA, includes, as an element of the offense, threats "to inflict injury or physical harm to the person or property of the person." Because the statute includes threats to property, and Lamoureux's threat was to physically harm property located in Montana, the offense, at least in part, was committed in Montana. We conclude that Lamoureux's conduct of making a threat occurred at least partly in Montana

16

because the content of his threat intended to produce detrimental and criminal effects within Montana.

¶34 Aside from the undisputed evidence that Lamoureux lived in Flathead County, there was also ample circumstantial evidence that Lamoureux, while in Montana, threatened Sam when Sam was in New York. The very content of Lamoureux's threat evinces a purpose and ability to immediately locate Stacey at the store and carry out his threat to physically harm her and burn down the building in which the jewelry store was located. Lamoureux told Sam: "I'm going to kill [Stacey] now"; "I'm going to kill her now . . . I'm on my way, I'm going to kill her . . . I'm going to burn your building down"; and Sam immediately took precautions to protect Stacey. Stacey spoke to law enforcement and was terrified by the threats; and Sam called law enforcement to have them protect Stacey while at the store and home. Sam and Stacey perceived Lamoureux's threats to be real and threatening, with the present ability for Lamoureux to carry them out. In addition to the content of his threat establishing jurisdiction, there was sufficient evidence and testimony for the court to conclude that Lamoureux made the threatening communication while in Montana. Here, "from the facts and evidence, the only rational conclusion [that] can be drawn is that the crime was committed in the state and county alleged"; it was reasonable to conclude that Lamoureux, while in Montana, communicated threats to immediately harm Stacey while she was in Montana, and burn down the building in which the jewelry store was located. *Jackson*, 180 Mont. at 200, 589 P.2d at 1013.

17

¶35    *4. Did the District Court fully and fairly instruct the jury in accordance with the evidence presented?*

¶36    "A criminal defendant has the right to notice of the crime under which he will be prosecuted." *State v. Hanna*, 2014 MT 346, ¶ 19, 377 Mont. 418, 341 P.3d 629. "An information must reasonably apprise the defendant of the charges against him so that he may have the opportunity to prepare and present his defense." *Spotted Eagle*, ¶ 9. That right is violated when the information charges the defendant of one crime, but the jury is permitted to convict the defendant of another. *Hanna*, ¶ 19. The State may seek to amend its charging choice but may not make substantive amendments within five days of trial. Section 46-11-205(1), MCA. The prohibition on late substantive amendments extends to prohibit a court from effectively amending the charge by instructing the jury on uncharged elements of an offense. *Spotted Eagle*, ¶¶ 13-16.

¶37    Lamoureux challenges the instructions given regarding Counts II and III and argues the District Court effectively amended the Information by improperly instructing the jury on uncharged elements as to Counts II and III.[2] He argues that by changing the essential elements, the instructions changed the nature and substance of the charge. He relies on our decision in *Spotted Eagle*. In *Spotted Eagle*, the State charged the defendant with Partner

---

[2] Count II charged Lamoureux with communicating to Sam and threatening Stacey, while speaking with the purpose to intimidate, threaten, and harass. The District Court instructed the jury on "obscene, lewd, or profane language" with the purpose to "harass, annoy or offend"—elements not found in the State's charge. Similarly, Count III charged Lamoureux with communicating to Sam and threatening Stacey and Sam's store, and speaking with the purpose to intimidate and threaten. The District Court, instructed the jury on Lamoureux using "obscene, lewd, or profane language with the purpose to harass, annoy or offend," or, alternatively, threats "with the purpose to harass, annoy or offend."

18

or Family Member Assault and specifically alleged in the information that the defendant had caused bodily injury. At the end of trial, the State offered a jury instruction that the defendant alternatively had committed the offense by causing reasonable apprehension of bodily injury. *Spotted Eagle*, ¶¶ 2-3. This Court determined that the State's reliance on the additional theory of reasonable apprehension of bodily injury constituted a substantive change to the charge, requiring reversal. *Spotted Eagle*, ¶¶ 11, 13-15. We concluded that "[c]hanging the essential elements change[s] the nature and substance of the charge" against the defendant. *Spotted Eagle*, ¶ 11.

¶38     Our decision in *Spotted Eagle*, however, did not take into account whether evidence presented at trial, and inferences therefrom, supported the alternative instruction. A jury instruction "may be given when it is relevant to evidence or issues in a case, and when it is supported either by some evidence or some logical inference from other evidence presented at trial." *State v. Johnson*, 1998 MT 289, ¶ 35, 291 Mont. 501, 969 P.2d 925 (citations omitted); *see also State v. Robbins*, 1998 MT 297, ¶ 28, 292 Mont. 23, 971 P.2d 359 ("As a basic rule, trial courts are required to instruct a jury on . . . issue[s] or theor[ies] that [are] supported by the evidence.") (*rev'd on other grounds*). Our decision in *Spotted Eagle* rested on the premise that the State made no suggestion, before or during trial, that it would offer a reasonable apprehension of bodily injury theory. The State first raised the theory through the jury instruction at the close of evidence.

¶39     Lamoureux cannot claim similar surprise here. In contrast to *Spotted Eagle*, evidence and inferences at trial manifestly supported giving the instructions for Counts II and III. Here, Lamoureux's own words were evidence that in threatening to "kill" Stacey,

19

Lamoureux used "obscene, lewd, or profane language with the purpose to harass, annoy or offend," as the jury was instructed for Counts II and III. As to Count II, Sam testified, without objection, that Lamoureux said, "I want to kill that fucking cunt . . . . I'm going to stuff her in a culvert for the skunks to eat her . . . . I'm going to kill her now." Sam testified that Lamoureux's language was profane, offensive, threatening, and harassing. As to Count III, Sam testified, again without objection, that Lamoureux said,

> I'm going to go kill her now. I want to go shoot her in the face with my .45 and watch her eyes bulge out. I'm going to kill that fucking cunt and then I'm going to put her in the garbage bin in back and set it on fire.

Again, Sam testified that Lamoureux's language was profane, threatening to him, offensive, and harassing. Thus, the court's instructions took this evidence into account— a factor that was not at issue in *Spotted Eagle*.

¶40 A district court has broad discretion in formulating jury instructions, and we review jury instructions to determine whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *Spotted Eagle*, ¶ 6. To constitute reversible error, any mistake in instructing the jury must prejudicially affect the defendant's substantial rights. *Spotted Eagle*, ¶ 6. Here, Lamoureux's right to notice of the charges brought against him was not violated—Lamoureux knew what he had been charged with, knew what the law said, knew what he said to Sam, and knew what the evidence against him was, as it was presented at trial. All three counts alleged that Lamoureux's conduct was contrary to § 45-8-213(1)(a), MCA, the entirety of which was given to the jury as an instruction without objection. We do not find this was an abuse of discretion.

20

**CONCLUSION**

¶41 The Privacy in Communications statute, § 45-8-213, MCA, is not overly broad nor an improper content-based law and does not violate the Montana and United States Constitutions. A violation of the Privacy in Communications statute may occur when the threatening communication is made about someone other than the recipient of that communication. The District Court correctly concluded that the evidence and testimony established that Lamoureux made the threatening communication to Sam while Lamoureux was in Montana and that it had jurisdiction over Count III. The District Court fully and fairly instructed the jury on the elements of the offenses in accordance with the charges and evidence that was presented. Lamoureux's convictions are affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON
/S/ JIM RICE

21